*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 09a0381p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

————————————————

MEMPHIS BIOFUELS, LLC,

                *Plaintiff-Appellant,*

*v.*

CHICKASAW NATION INDUSTRIES, INC.,

                *Defendant-Appellee.*

No. 08-6145

————————————————

Appeal from the United States District Court
for the Western District of Tennessee at Memphis.
No. 08-02253—Samuel H. Mays, Jr., District Judge.

Submitted: October 6, 2009

Decided and Filed: November 4, 2009

Before: MARTIN, COLE, and KETHLEDGE, Circuit Judges.

————————————————

## COUNSEL

**ON BRIEF:** John R. Branson, BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, P.C., Memphis, Tennessee, for Appellant. Donna Brown Jacobs, BUTLER, SNOW, O'MARA, STEVENS & CANNADA, PLLC, Jackson, Mississippi, Randall Dean Noel, Daniel Warren Van Horn, BUTLER, SNOW, O'MARA, STEVENS & CANNADA, PLLC, Memphis, Tennessee, for Appellee.

————————————————

## OPINION

————————————————

COLE, Circuit Judge. Plaintiff-Appellant Memphis Biofuels, LLC appeals the dismissal of its suit against Defendant-Appellee Chickasaw Nation Industries, Inc. for lack of subject-matter jurisdiction. Because we agree with the district court that Chickasaw Nation Industries, Inc. enjoys tribal-sovereign immunity, we **AFFIRM**.

1

## I.  BACKGROUND

Memphis Biofuels, LLC ("MBF") is a biodiesel refining company incorporated in Delaware with its principal place of business in Memphis, Tennessee.  Chickasaw Nation Industries, Inc. ("CNI") is a federally chartered tribal corporation with its principal place of business in Oklahoma and is incorporated under the Oklahoma Indian Welfare Act ("OIWA"), 25 U.S.C. § 503, *et seq.*  The OIWA expanded the Indian Reorganization Act ("IRA"), 25 U.S.C. § 461, *et seq.*, to include Indian tribes in Oklahoma.  Section 17 of the IRA, 25 U.S.C. § 477, allows for a tribe to incorporate; thus, tribes incorporated under the IRA or OIWA are called Section 17 corporations.  As a Section 17 corporation, CNI is wholly owned by the Chickasaw Nation tribe but is an entity separate and distinct from the Chickasaw Nation.

In 2006, CNI and MBF negotiated a deal whereby CNI would deliver diesel fuel and soybean oil to MBF's Memphis facility for refinement and later resale as biodiesel.  MBF recognized that, should a dispute arise, CNI might try to claim sovereign immunity.  Thus, MBF insisted on a contractual provision expressly waiving any sovereign immunity and a "representation and warranty" that CNI's waiver was valid, enforceable, and effective.  Throughout the negotiations, the parties exchanged draft versions of the agreement.  On October 5, 2006, CNI forwarded MBF a draft of the agreement that CNI's in-house lawyers had reviewed and electronically edited.  The edits included five separate comments; two of the comments addressed the sovereign-immunity waiver provision and said that CNI board approval was necessary to waive tribal-sovereign immunity.  Ultimately, however, both parties signed the agreement, and the board did not waive immunity.

CNI repudiated the agreement, and MBF began mediation procedures through the American Arbitration Association ("AAA"), as required by the agreement.  Initially, CNI participated in the mediation.  CNI sent its president and CEO, a second corporate officer, two corporate counsels, and outside counsel to attend a day-long mediation session with MBF.  After the session, the parties negotiated directly.  Unable to resolve the dispute, MBF filed a demand for arbitration on March 10, 2008, but CNI refused to arbitrate.  Instead, on April 15, 2008, CNI filed suit against MBF and the AAA in Chickasaw Nation District Court in Oklahoma.  The lawsuit seeks a declaratory judgment that the waiver of CNI's sovereign

immunity is invalid for want of board approval and seeks injunctive relief to prevent the arbitration between MBF and CNI.

MBF responded by filing suit in the United States District Court for the Western District of Tennessee. MBF sought a declaratory judgment under 28 U.S.C. § 2201 that CNI's waiver of sovereign immunity is effective; an order compelling arbitration under the contract's arbitration clause; and a temporary restraining order ("TRO") prohibiting CNI from proceeding with its case against MBF in the Chickasaw Nation District Court. CNI moved to dismiss MBF's suit for lack of subject-matter jurisdiction under Federal Civil Procedure Rule 12(b)(1) or, in the alternative, to stay the suit based on MBF's failure to exhaust tribal remedies.

The district court held a TRO hearing on June 10, 2008. Both parties emphasized the threshold issue of whether MBF's action survives CNI's motion to dismiss, and, in particular, whether the federal court has jurisdiction. The district court concluded that it did not have jurisdiction for two reasons. First, the court decided that it did not have diversity jurisdiction because CNI has sovereign immunity, and, therefore, CNI is not a diverse party under 28 U.S.C. § 1332. Second, according to the district court, the case raises no federal question, because, in its complaint, MBF did not properly plead the issue of the Chickasaw Nation District Court's jurisdiction over MBF as a basis for federal-question jurisdiction. Because the court decided it did not have jurisdiction, the court granted CNI's motion to dismiss. MBF timely appealed.

## II. ANALYSIS

We "'review de novo the district court's decision to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1).'" *Lovely v. United States*, 570 F.3d 778, 781 (6th Cir. 2009) (quoting *Howard v. Whitbeck*, 383 F.3d 633, 636 (6th Cir. 2004)). Also, "[w]here the district court does not merely analyze the complaint on its face, but instead inquires into the factual predicates for jurisdiction, the decision on the 12(b)(1) motion resolves a 'factual' challenge rather than a 'facial' challenge, and we review the district court's finding for clear error." *Id.* at 781-82. (quotation marks omitted). But, of course, "review of the court's *application of the law* to the facts is *de novo*." *Id.* at 782

(quotation marks omitted). Here, the relevant facts are undisputed; therefore, we review de novo the district court's decision to grant CNI's motion to dismiss.

**A.    Tribal Sovereign Immunity**

As a threshold matter, we must determine if CNI enjoys tribal-sovereign immunity. If so, a dismissal for lack of jurisdiction was proper. *See Lovely*, 570 F.3d at 782 n.2 (6th Cir. 2009) ("[S]overeign immunity is a jurisdictional doctrine . . . .") (internal quotation marks omitted); *cf. Nair v. Oakland County Cmty. Health Auth.*, 443 F.3d 469, 474 (6th Cir. 2006) ("[T]he Eleventh Amendment is jurisdictional in the sense that it is a limitation on the federal court's judicial power.") (internal quotation marks omitted). Moreover, if CNI enjoys tribal-sovereign immunity, we need not address the issues of diversity jurisdiction and federal-question jurisdiction. *See Miner Elec., Inc. v. Muscogee (Creek) Nation*, 505 F.3d 1007, 1011 (10th Cir. 2007) (holding that if an entity enjoys tribal-sovereign immunity, federal jurisdiction is otherwise irrelevant and dismissal of the suit is proper). MBF argues that CNI waived its tribal-sovereign immunity either explicitly or implicitly. Thus, to determine if CNI enjoys tribal-sovereign immunity, we must address three issues: (1) Whether incorporating under Section 17 automatically waives tribal-sovereign immunity; (2) whether CNI expressly waived tribal-sovereign immunity; and (3) whether equitable doctrines apply to waive CNI's tribal-sovereign immunity.

*1.     Automatic Waiver*

MBF argues that the act of incorporation under Section 17 divests entities of their tribal-sovereign immunity. This is an issue of first impression for our Court, and other courts are in dispute over this issue. *See generally* Ann K. Wooster, *Validity and Construction of Indian Reorganization Act*, 28 A.L.R. Fed. 2d 563, §§ 25, 26 (2009). For example, in *GNS, Inc., v. Winnebago Tribe of Nebraska*, the United States District Court for the Northern District of Iowa held that "a Section 17 corporation waives sovereign immunity." 866 F. Supp. 1185, 1188-89. (N.D. Iowa 1994). In contrast, the Ninth Circuit held in *American Vantage Companies v. Table Mountain Rancheria* that a "tribe that elects to incorporate does not automatically waive its tribal-sovereign immunity by doing so." 292 F.3d 1091, 1099 (9th Cir. 2002). After reviewing the two lines of cases, the district court concluded that

incorporating under Section 17 does not automatically divest an entity of its tribal-sovereign immunity.

We agree. As discussed above, CNI is chartered under the OIWA, 25 U.S.C. § 503, *et seq*. The OIWA is an extension of the IRA, 25 U.S.C. § 461, *et seq*., which Congress passed to encourage non-Indian businesses to engage in commerce with Indian tribes. *See Parker Drilling Co. v. Metlakatla Indian Cmty.*, 451 F. Supp. 1127, 1137 (D. Alaska 1978). Section 16 of the IRA, 25 U.S.C. § 476, permits Indian tribes to adopt constitutions, and Section 17 allows the incorporation of a tribal business. Section 17 provides:

> The Secretary of the Interior may, upon petition by any tribe, issue a charter of incorporation to such tribe . . . . Such charter may convey to the incorporated tribe the power to purchase, take by gift, or bequest, or otherwise, own, hold, manage, operate, and dispose of property of every description, real and personal, including the power to purchase restricted Indian lands and to issue in exchange therefor interests in corporate property, and such further powers as may be incidental to the conduct of business, not inconsistent with law . . . .

25 U.S.C. § 477. Thus, the statute is silent as to whether Section 17 incorporated tribes have sovereign immunity.

We conclude that it is more appropriate to interpret this silence as not abrogating sovereign immunity for two reasons. First, in *Kiowa Tribe of Oklahoma v. Manufacturing Technologies, Inc.*, the Supreme Court held that "[a]s a matter of federal law, an Indian tribe is subject to suit only where Congress has authorized the suit or the tribe has waived its immunity." 523 U.S. 751, 754 (1998). The Court came to this conclusion, in part, because sovereign immunity is part of the common law. *See United States v. U.S. Fid. & Guar. Co*., 309 U.S. 506, 512 (1940). So, unless Congress abrogates a tribe's immunity, or the tribe waives its immunity, the tribe's immunity remains intact. The Supreme Court has also held that abrogation of tribal-sovereign immunity must be clear and may *not* be implied. *Okla. Tax Comm'n v. Citizen Band Potawatomi Tribe of Okla.*, 498 U.S. 505, 509 (1991); *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58 (1978). Because the language of Section 17 does not explicitly waive sovereign immunity, we conclude that it should not be interpreted to do so impliedly. Second, "statutes are to be construed liberally in favor of the Indians, or [tribes] with ambiguous provisions being interpreted to their benefit." *Montana v. Blackfeet*

*Tribe of Indians*, 471 U.S. 759, 766 (1985). This directive to favor tribes counsels against interpreting Section 17 as impliedly waiving tribal-sovereign immunity.

MBF responds by arguing that under a multi-factor test, CNI is not "an arm" of the Chickasaw Nation and thus does not enjoy tribal-sovereign immunity. MBF relies on a Colorado appellate court decision, *State ex rel. Suthers v. Cash Advance & Preferred Cash Loans*, 205 P.3d 389 (Colo. Ct. App. 2008), and an Alaska Supreme Court decision, *Runyon ex rel. B.R.. v. Ass'n of Vill. Council Presidents*, 84 P.3d 437 (Alaska 2004), for this argument. But neither of these cases addressed directly a Section 17 corporation; instead, the cases addressed entities incorporated under tribal or state law. Moreover, the language of Section 17 itself—by calling the entity an "incorporated tribe"—suggests that the entity is an arm of the tribe.

In sum, we conclude that the better reading of Section 17 is that it creates "arms of the tribe" that do not automatically forfeit tribal-sovereign immunity.

2.      *Express Waiver*

Of course, a tribe may choose to expressly waive its tribal-sovereign immunity either in its charter or by agreement. *See Kiowa*, 523 U.S. at 754. Here, however, CNI did not make that choice. CNI's charter requires board approval to waive sovereign immunity. The charter provides:

> To sue in its corporate name and, notwithstanding the immunity possessed by the Corporation as a wholly owned corporation of the Chickasaw Nation, to permit by written resolution of the board of directors enforcement of leases, contracts, agreements and mortgage instruments to which the Corporation is a party, against the Corporation in tribal court, or any court of competent jurisdiction by agreement of the board of directors . . . .

MBF argues that CNI's charter has a sue-and-be sued clause, which expressly waives immunity. Some courts have held that a broad sue-and-be-sued clause does waive tribal-sovereign immunity. *See Validity and Construction of Indian Reorganization Act*, 28 A.L.R. Fed. 2d 563 at § 27 (citing cases); *but see id.* at § 28 (citing cases holding that sue-and-be-sued clause does not constitute express waiver). Here, however, CNI's charter does not contain a broad sue-and-be-sued clause; instead, the ability to take legal action is limited to

action approved by the board of directors.  Thus, even if we were to conclude that a broad sue-and-be-sued clause waives tribal-sovereign immunity, this clause is insufficient to do the job.  *Cf. Ninigret Dev. Corp. v. Narragansett Indian Wetumocuck Hous. Auth.*, 207 F.3d 21, 30 (1st Cir. 2000) ("[T]he enactment of such an ordinance . . . does not waive a tribe's sovereign immunity. . . . [The ordinance] authorizes the Authority to shed its immunity 'by contract,' and these words would be utter surplusage, if the enactment of the ordinance itself served to perfect the waiver.").  Therefore, we conclude that the charter does not contain an express waiver of tribal-sovereign immunity.

In addition to the tribal charter, an agreement can validly waive tribal-sovereign immunity.  Here, the parties agree that the board of directors did not pass a resolution waiving sovereign immunity.  The parties did, however, sign a waiver provision whereby both parties waived all immunities.  MBF believed that CNI obtained the required approval for this waiver provision—but regardless of what MBF may have thought, board approval was not obtained, and CNI's charter controls.  In short, without board approval, CNI's sovereign immunity remains intact.

### 3. Equitable Doctrines

MBF also argues that even without board approval, CNI waived sovereign immunity based on equitable doctrines because CNI signed the agreement representing that it waived sovereign immunity.  We disagree.  Courts have held that unauthorized acts of tribal officials are insufficient to waive tribal-sovereign immunity.  *See Native Am. Distrib. v. Seneca-Cayuga Tobacco* Co., 546 F.3d 1288, 1295 (10th Cir. 2008) (holding that tribal entity was not equitably estopped from asserting immunity because "misrepresentations of the Tribe's officials or employees cannot affect its immunity from suit"); *Sanderlin v. Seminole Tribe of Fla.*, 243 F.3d 1282, 1288 (11th Cir. 2001) (rejecting argument that tribal representative had actual or apparent authority to waive immunity because "[s]uch a finding would be directly contrary to the explicit provisions of the Tribal Constitution"); *World Touch Gaming, Inc. v. Massena Mgmt., LLC*, 117 F. Supp. 2d 271, 276 (N.D.N.Y. 2000) (holding that a senior vice president's signature to an agreement with an express waiver of sovereign immunity provision did not waive sovereign immunity because that right was reserved exclusively to the tribal council); *Danka Funding Co. v. Sky City Casino*, 747 A.2d 837, 841-

42, 844 (N.J. Super. Ct. 1999) (holding that a controller's signature on a contract containing a forum selection clause was insufficient to waive sovereign immunity, in part, because the right to waive immunity was reserved to the tribal council); *but see Rush Creek Solutions, Inc. v. Ute Mountain Ute Tribe*, 107 P.3d 402, 407-08 (Colo. Ct. App. 2004) (holding that a tribe's agent who has apparent authority may waive immunity without board approval). Accordingly, we conclude that CNI's charter controls, and, without board approval, the waiver in the agreement is insufficient.

This result may seem unfair, but that is the reality of sovereign immunity: "[I]mmunity can harm those who . . . are dealing with a tribe . . . . These considerations might suggest a need to abrogate tribal immunity, [but] . . . we defer to the role Congress may wish to exercise in this important judgment." *Kiowa*, 523 U.S. at 758.

Because we conclude that CNI enjoys tribal-sovereign immunity, we do not address the issues of diversity jurisdiction and federal-question jurisdiction.

### III.  CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's decision.