2011 OK 61

Jerry R. DILLINER, Darlene Boyd, Gary Crow, Katie L. Fisher, Jacob Althouse, James Davis, Margaret Davis, Troy D. Dry, Lindy Flickinger, Cody A. Fisher, Shandrea D. Housman, Linda C. Judd, Roxann Kinsey, Elizabeth Lewis, Kirk Postoak, Jamie T. Quick, Janice Quick, Jeremy Quick, Sammy Quick, Albert Ty Slaughter, Caleb J. Slaughter, Sandra L. Slaughter, Dustin Spicer, Louis Spicer, Sherry L. Spicer, Gary Toland, Jordana N. Tyron, and Mark Woods, Appellants,

v.

SENECA–CAYUGA TRIBE
of Oklahoma, Appellee.

No. 109,085.

Supreme Court of Oklahoma.

June 28, 2011.

Dennis Caruso, Caruso Law Firm, P.C., Tulsa, Oklahoma, Clint Ward, Ward & Lee, Vinita, Oklahoma, for Plaintiffs/Appellants.

Scott N. Edwards, Miami, Oklahoma, John G. Ghostbear, Tulsa, Oklahoma, for Defendant/Appellee.

EDMONDSON, J.

¶ 1 The question before us is whether the Seneca–Cayuga Tribe of Oklahoma expressly and unequivocally waived its sovereign immunity with respect to certain employment contracts entered into with tribal employees. The Seneca–Cayuga Tribe of Oklahoma (Tribe) is a federally recognized Indian tribe. The Tribe has a Constitution and By–Laws. The Tribe also was issued a corporate charter by the Secretary of the Interior under the Oklahoma Indian Welfare Act, 25 U.S.C. § 503. The Tribe and its corporation are separate entities. *State ex rel. Oklahoma Tax Comm'n v. Thlopthlocco Tribal Town of Oklahoma,* 1992 OK 127, 839 P.2d 180, 184.[1] Plaintiffs have sued the Tribe and no allegations are made in the petition against a corporate entity.

¶ 2 Pursuant to Art. VI of its Constitution, the Business Committee of the Tribe has the power to transact business and to speak or act on behalf of the Tribe in all matters in which the Tribe is empowered to act. Article IV of the By–Laws provides that four members of the Business Committee shall constitute a quorum at any meeting. Resolution # 23–120303 "Business Committee Actions," dated December 3, 2003, provides that, pursuant to Article VI of the Constitution and Article IV of the By–Laws of the Tribe, no individual member of the Business Committee is authorized to transact business or otherwise speak or act on behalf of the Tribe in any matter on which the Tribe is empowered to act. It further provides that the act of a majority of members present in person at a meeting at which a quorum is present shall be the act of the Business Committee.

¶ 3 The Business Committee of the Seneca–Cayuga Tribe passed Resolution # 22–120303 on December 3, 2003. It provided that the Seneca–Cayuga Tribe has the right to assert sovereign immunity as a defense to an action brought against the Tribe, and states that:

> ... no waiver, either express or implied, of the right to assert sovereign immunity as a defense in an action brought against the Seneca–Cayuga Tribe of Oklahoma shall be valid without the consent of the Business Committee expressed by resolution.

¶ 4 On or about July 26, 2007, employment contracts were entered into between the Tribe and tribal employees for terms of three years. The contracts were identical except for job titles and salaries. The contracts provided that if the employee was terminated by the employer, the employee would be entitled to receive his or her continued base salary for the remainder of the contract term. Section 9 of the employment contracts contained a provision for limited waiver of sovereign immunity:

> 9. Waiver of Sovereign Immunity
>
> The Tribe hereby expressly grants to Employee a limited waiver of its sovereign immunity from uncontested suit or judicial litigation.

¶ 5 On July 26, 2007, a poll vote of the Seneca–Cayuga Business Committee resulted in Resolution # 27–072607, which was styled: "Authorization for Chief to Sign a Three

---

1. In that case we rejected the Tax Commission's argument that the corporation and the tribe should be treated as one because they were so closely related as to be indistinguishable. We said that the two entities were closely related but could not be considered one and the same in light of congressional intent in permitting incorporation of tribes. 839 P.2d at 183. See also *Native American Distributing v. Seneca–Cayuga Tobacco Company,* 546 F.3d 1288 (10th Cir. 2008).

Year Employment Agreement with Tribal Employees." The resolution stated that Chief Paul Spicer was authorized to sign a three year employment agreement between the Seneca–Cayuga Tribe of Oklahoma and tribal employees at their present salaries and in their present positions of employment. The poll vote was 5 yes, 0 no and 2 unavailable.[2]

¶ 6 On August 14, 2007, the Business Committee of the Tribe, at its regular business meeting, passed a resolution in an attempt to ratify Resolution # 27–072607. Resolution # 46–081407 was styled: "To Ratify Authorization to Enter Into Three Year Employment Contracts." Resolution # 46–081407 recited that the Business Committee had approved Resolution # 27–072607 on July 26, 2007, which was authorization for the Chief to sign a three year employment agreement with tribal employees, and that the Business Committee felt that the action authorized by Resolution # 27–072607 was in the best interest of the Tribe and its government, and of the Tribal Corporations. The final clause, however, recited instead that Resolution *# 17–061507* was ratified and affirmed.

¶ 7 The plaintiffs were terminated from employment prior to the end of the three year term and filed suit in the district court of Ottawa County to recover their base salaries until the end of the term. The Tribe moved to dismiss on the grounds of tribal sovereign immunity. The plaintiffs argued that the Tribe expressly waived sovereign immunity because the contracts contained a waiver of sovereign immunity and the Tribe had ratified the contracts by the Business Committee's resolutions. The Tribe argued that it did not waive sovereign immunity and that the resolutions did not ratify the contracts or consent to waiver of the Tribe's sovereign immunity.

¶ 8 After a hearing on the Tribe's motion to dismiss, the trial judge made findings of fact and conclusions of law and determined that the Tribe had waived sovereign immunity. He denied the Tribe's motion to dismiss by order dated June 24, 2010. The Tribe filed a motion for reconsideration, raising numerous arguments, including that the resolutions relied upon by plaintiffs were not valid and that, even if they were valid, they did not contain an express waiver of sovereign immunity, as required by federal and tribal law, and they did not ratify the contracts.

¶ 9 The Tribe argues that Resolution # 27–072607 is not valid because tribal law requires the act of a majority of members present in person at a meeting at which a quorum is present in order to be a valid act of the Business Committee, pursuant to Resolution # 23–20303. They argue that Resolution # 46–081407, which purports to ratify Resolution # 27–072607, is not valid because it in fact ratifies a different resolution, # 17–061507.[3]

¶ 10 Tribe argues that even if the resolutions are valid, Resolution # 27–072607 did not ratify the contracts, but only gave authorization for the Chief to sign them. Resolution # 46–081407 did not ratify the contracts, but only ratified the prior resolution. Thus, Tribe argues, the employment contracts were never validly ratified or authorized by the Tribe and the Tribe did not waive sovereign immunity as required by tribal law.

¶ 11 The plaintiffs responded to the motion to reconsider by filing a motion to strike or deny the motion on the grounds that it was untimely filed. The plaintiffs did not respond to the merits of Tribe's arguments on the motion to reconsider. After a hearing, the trial judge ruled that the Tribe had not

---

**2.** The business committee was made up of: Paul Spicer, Chief; Katie Birdsong, 2nd Chief; Kay Ellison, Secretary/Treasurer; Sharon Winnie–Vann, first councilperson; Mike Jones, second councilperson; Patricia Armstrong, third councilperson; and Dennis Wadsworth, fourth councilperson.

**3.** Resolution # 17–061507 authorized the Tribe to borrow money from Bank of Oklahoma and was styled: "To Borrow Up to Ten Million Dol-

lars from Bank of Oklahoma." The terms of the contract were spelled out in the resolution and the Business Committee specifically waived the Tribe's immunity to the extent set out therein and authorized Chief Paul Spicer to negotiate and sign documents on behalf of the Tribe necessary to implement the loan. There, the resolution specifically stated that the Tribe's sovereign immunity was being waived pursuant to the provisions of Resolution # 22–120303.

waived its sovereign immunity and granted the Tribe's motion to dismiss for lack of jurisdiction. Plaintiffs appealed and this Court granted plaintiffs' motion to retain the appeal.

■■■ ¶ 12 The standard of review for questions concerning the jurisdictional power of the trial court to act is de novo. *Jackson v. Jackson,* 2002 OK 25, 45 P.3d 418. As a matter of federal law, an Indian tribe is subject to suit only where Congress has authorized the suit or the tribe has waived its immunity. *Kiowa Tribe of Oklahoma v. Manufacturing Technologies, Inc.,* 523 U.S. 751, 754, 118 S.Ct. 1700, 140 L.Ed.2d 981 (1998). Waiver of sovereign immunity cannot be implied but must be unequivocally expressed. *Santa Clara Pueblo v. Martinez,* 436 U.S. 49, 58, 98 S.Ct. 1670, 56 L.Ed.2d 106 (1978). Absent an effective waiver or consent, a state court may not exercise jurisdiction over a recognized Indian tribe. *Puyallup Tribe, Inc. v. Department of Game of the State of Washington,* 433 U.S. 165, 172, 97 S.Ct. 2616, 53 L.Ed.2d 667 (1977).

■■■ ¶ 13 Courts have looked to tribal law in determining jurisdiction. The Tenth Circuit Court of Appeals, in *Native American Distributing v. Seneca–Cayuga Tobacco Company,* 546 F.3d 1288, 1295 (10th Cir. 2008), looked to tribal law to determine whether the Seneca–Cayuga Tobacco Company was an enterprise of the tribe as a governmental entity rather than an enterprise of the tribal corporation. They held that the district court lacked jurisdiction because the business committee of the tribe invoked its constitutional powers in the resolution creating the tobacco company, which resolution expressly declared that the tobacco company and its activities were essential governmental functions of the tribe.

¶ 14 In *Sanderlin v. Seminole Tribe of Florida,* 243 F.3d 1282, 1287 (11th Cir.2001), the tribe's chief was held to be without actual or apparent authority to enter into contracts that would waive the tribe's sovereign immunity for Rehabilitation Act suits where the tribal resolution did not specifically provide for waiver. A tribal ordinance specifically dealt with the tribe's sovereign immunity and how a waiver could be effected by tribal

leaders. It provided that the consent of the Seminole Tribe of Florida to waive its immunity from suit in any state or federal court could be accomplished only through the clear, express and unequivocal consent of the tribe pursuant to a resolution duly enacted by the tribal council sitting in legal session. Such resolution was required to specifically acknowledge that the tribe was waiving its sovereign immunity on a limited basis and describe the purpose and extent to which such waiver applied. The 11th Circuit said:

> "Chief Billie did not somehow become vested with the power to waive that immunity simply because he had the actual or apparent authority to sign applications on behalf of the Tribe for federal funding. Such a finding would be directly contrary to the explicit provisions of the Tribal Constitution and Tribal Ordinance C–01–95 which expressly set forth how, when, through whom and under what circumstances the Seminole Tribe may voluntarily waive its immunity. 243 F.3d at 1288.

The court found that the tribe's acceptance of federal funds and entering into contracts which required the tribe to refrain from discrimination on the basis of disability did not waive the Tribe's sovereign immunity from suits brought pursuant to the Rehabilitation Act.

¶ 15 The Sixth Circuit has held that a waiver of sovereign immunity clause in a tribal corporation's contract was insufficient without approval of the board by resolution, as required by tribal law. *Memphis Biofuels, LLC v. Chickasaw Nation Industries, Inc.,* 585 F.3d 917 (6th Cir.2009). Chickasaw Nation Industries, Inc. (CNI), a federally chartered tribal corporation incorporated under the Oklahoma Indian Welfare Act, entered into a contract with Memphis Biofuels, LLC. (MBF). CNI's Charter required that approval by its board of directors was necessary in order to waive CNI's sovereign immunity. MBF insisted on a contractual provision expressly waiving any sovereign immunity, coupled with a "representation and warranty" that CNI's waiver was valid, enforceable and effective. During drafting negotiations, two comments addressed the sovereign immunity waiver provision and

stated that approval by the board of CNI was necessary in order to waive sovereign immunity. MBF and CNI signed the contract, but the board of directors of CNI did not waive immunity. CNI repudiated the agreement and MBF filed a demand for arbitration.

¶ 16 Litigation ensued and, on appeal, the Sixth Circuit found that CNI had not expressly waived its tribal sovereign immunity, either in its charter or by agreement. They stated that CNI's corporate charter controlled the way that sovereign immunity could be waived, and the charter required approval by the board of directors. Even though the parties had signed a provision waiving all immunities and MBF believed that CNI had obtained the required board approval, the waiver was insufficient. Tribal law required approval of the board of directors to waive sovereign immunity and, without board approval, CNI's sovereign immunity remained intact. 585 F.3d at 922.

¶ 17 Courts have rejected equitable estoppel as a basis for waiver of tribal sovereign immunity on the grounds that unauthorized actions of officers and employees do not waive immunity or confer jurisdiction on a court in the absence of an express waiver, applying federal sovereign immunity principles to tribal sovereign immunity. See *Native American Distributing v. Seneca–Cayuga Tobacco Company*, 546 F.3d 1288, 1295 (10th Cir.2008), citing *Merrion v. Jicarilla Apache Tribe*, 455 U.S. 130, 148, 102 S.Ct. 894, 71 L.Ed.2d 21 (1982). See also, *Memphis Biofuels, LLC v. Chickasaw Nation Industries, Inc.*, 585 F.3d 917, 922 (6th Cir. 2009).

¶ 18 In the case at bar, the Tribe's Constitution provides for a Business Committee to act on behalf of the Tribe. The Business Committee passed a resolution pursuant to the Tribe's Constitution that requires Business Committee consent to waiver of sovereign immunity by resolution. Here, tribal law controls the way sovereign immunity can be waived by the Tribe. There is no express waiver of sovereign immunity by the Business Committee, nor is there a consent to such waiver by the Business Committee. The contracts do not provide for application of Oklahoma law, for binding arbitration of disputes or enforcement of arbitration decisions in any state or federal court with jurisdiction, such as were held to waive sovereign immunity in *C & L Enterprises, Inc. v. Citizen Band Potawatomi Indian Tribe of Oklahoma*, 532 U.S. 411, 121 S.Ct. 1589, 149 L.Ed.2d 623 (2001).[4]

¶ 19 Plaintiffs ask us to conclude that, because the Business Committee granted authority to Chief Spicer to sign employment contracts with tribal employees for three year terms at their current positions and salaries, those contracts must have been approved and ratified in all particulars, including the limited waiver of sovereign immunity. We do not agree with plaintiffs' position. Federal law requires that the waiver of sovereign immunity be express and unequivocal; it cannot be implied. The Tribe's Constitution and By–Laws do not authorize the Chief to waive the Tribe's sovereign immunity.

¶ 20 Waiver of sovereign immunity was neither expressed nor consented to in the Business Committee's resolutions that authorized the Chief to sign the employment contracts. Neither of the resolutions expressly ratified the contracts that Chief Spicer entered into: Resolution # 27–072607 only authorized the Chief to sign a contract with tribal employees for a three year term, in their present positions of employment and at their present salaries; Resolution # 46–081407 ratified only the resolution, not the contracts. We must conclude that under these circumstances, there was no express

4. That case held that the tribe waived its immunity by expressly agreeing in the contract to arbitration and by agreeing that Oklahoma law would govern such disputes. The contract was a standard form agreement that was proposed by the tribe. Oklahoma's Uniform Arbitration Act provided that agreements that provided for arbitration in Oklahoma conferred jurisdiction on any court of competent jurisdiction in the state. The Supreme Court held that the contract's arbitration provision required arbitration of all disputes related to the contract, and by selecting Oklahoma law, the parties effectively consented to confirmation of the award in accordance with the Oklahoma Uniform Arbitration Act.

and unequivocal waiver of the Tribe's sovereign immunity.[5]

¶21 The judgment of the trial court is affirmed.

¶22 COLBERT, V.C.J., KAUGER, WINCHESTER, EDMONDSON, REIF, COMBS, GURICH, JJ., Concur.

¶23 WATT, J., Concurring in Result.

¶24 TAYLOR, C.J., dissenting.

There is a waiver of sovereign immunity that has now become inconvenient to the tribe. The tribe now wants to back out of an agreement it made with its own employees. After examining all the circumstances of this case, it is my view that sovereign immunity has been waived.

---

5. Because we find that the resolutions do not clearly and unequivocally waive the Tribe's sovereign immunity, we need not address Tribe's argument that the resolutions were not valid.