DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**MMMG, LLC** and **MOBILE MIKE PROMOTIONS, INC.,**
Appellants,

v.

**SEMINOLE TRIBE OF FLORIDA, INC.,** d/b/a **TRIBE, INC., TONY SANCHEZ, JR.,** individually, **LARRY HOWARD,** individually, **SALLY TOMMIE,** individually, **ANDREW BOWERS,** individually, **MIKE ULIZIO,** individually, **STEVEN OSCEOLA,** individually and **CHRIS OSCEOLA,** individually,
Appellees.

No. 4D15-235

[June 15, 2016]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Carlos A. Rodriguez, Judge; L.T. Case No. CACE-14-00419 (14).

Gary S. Phillips and Jeffrey B. Shalek of Phillips, Cantor, Shalek, Rubin & Pfister, P.A., Hollywood, for appellant.

Edward G. Guedes and Alicia H. Welch of Weiss Serota Helfman Cole & Bierman, P.L., Coral Gables for appellee, Seminole Tribe of Florida, Inc. d/b/a Tribe, Inc.

GROSS, J.

MMMG, LLC and Mobile Mike Promotions, Inc. appeal the involuntary dismissal of their complaint against a federal tribal corporation affiliated with the Seminole Tribe. We affirm the dismissal because the tribal corporation enjoyed sovereign immunity from suit, which was not effectively waived according to the procedure required in the corporation's charter and bylaws.

Given the long history of exploitation of Native Americans, Congress has enacted statutes designed to protect tribes and tribal corporations. These statutes have been construed by federal and Florida courts as placing the onus on the non-tribal party to ensure that any waiver of sovereign immunity be executed in strict compliance with applicable tribal

operating documents; common law doctrines such as apparent authority do not override the protection provided by federal law.

### *The History Between Mobile Mike and The Seminole Tribe of Florida, Inc.*

Mobile Mike, a South Florida radio personality, owns Mobile Mike Promotions, Inc. (the "Production Company"). In 2011, the Production Company and the Seminole Tribe of Florida, Inc. ("STOFI"), a corporate entity of the Seminole Tribe (the "Tribe"), entered into an advertising joint venture called MMMG, LLC (the "Joint Venture"). STOFI later broke the Joint Venture agreement. The Production Company and the Joint Venture together filed a ten-count complaint against STOFI and other tribal members individually (collectively the "Defendants"). STOFI moved to dismiss, asserting the trial court lacked jurisdiction due to STOFI's sovereign immunity. After a five-day evidentiary hearing, the trial court found that STOFI was protected by sovereign immunity, which it had not waived pursuant to STOFI's charter and bylaws, and dismissed STOFI as a party.

*The Seminole Tribe and STOFI*

The Tribe is a federally recognized Native American tribe governed by a Tribal Council, which is duly chartered and recognized by the U.S. Department of the Interior, pursuant to section 16[1] of the Indian Reorganization Act of 1934 ("the Act").[2] STOFI is a tribal corporation, also chartered and approved by the U.S. Department of the Interior, pursuant to section 17 of the Act.[3] STOFI's purpose is to engage in commercial enterprises for the economic betterment of its tribal members. However, STOFI has no control over any aspect of the Tribe's other endeavors, including Seminole Gaming, the Tribe's gaming operations.

STOFI's ownership is vested in the approximately 4,000 registered members of the Tribe and a board of directors controls its operations. With respect to STOFI's sovereign immunity, STOFI's Charter had previously contained "sue and be sued" language which was removed in 1996 and replaced with Article VI, Section 9, which allows a waiver of STOFI's

---

[1] 25 U.S.C. § 476 (2012).
[2] 25 U.S.C. §§ 461-94 (2012).
[3] 25 U.S.C. § 477 (2012). Most of the case law relevant to these provisions refer to Section 16 and 17 entities, which is how they will be referred to for consistency. A Section 16 entity is defined in 25 U.S.C. § 476 and a Section 17 entity is defined in 25 U.S.C. §477.

sovereign immunity from suit, but only if expressly stated by contract that such is the case and that such waiver shall not be deemed a consent by the said corporation or the United States to the levy of any judgment, lien or attachment upon the property of [STOFI], other than income or chattels especially pledged or assigned pursuant to such contract.

Pursuant to STOFI's Bylaws, any delegation of authority to an officer, such as waiving sovereign immunity, must be effected by a written Board resolution and must specify the nature of the authority granted and any imposed limitations. Additionally, in matters that have not been specifically ordered by the Board, the president should call these matters to the Board's attention so that it has the opportunity to decide the issues, set the policy, or establish the procedure the corporation is to follow.

While the Tribe and its Council are a separate entity from STOFI, the rules governing how the Tribe waives sovereign immunity are relevant to issues raised in this appeal. The Tribe enacted a 1995 Ordinance addressing how immunity could lawfully be waived on behalf of the Tribe and "its subordinate economic and governmental units, its tribal officials, employees and authorized agents." To waive immunity, the Ordinance requires clear, express and unequivocal consent by the Tribe or the United States Congress. While STOFI does not claim on appeal that the Ordinance applies to STOFI's process for waiving sovereign immunity, it would apply to any waiver on the part of the Tribe or Seminole Gaming, and the contract at issue purports to grant rights belonging to those entities.

*The Joint Venture*

In late 2011, STOFI entered into a non-binding Letter of Intent with the Production Company to create the Joint Venture, which would provide promotional, advertising, and marketing services. Although STOFI did not have authority to contract for advertising rights with respect to the Tribe or Seminole Gaming, STOFI did agree to make a good faith effort to have the Joint Venture designated as the agency of record not just for STOFI but also, subject to the Tribe's approval, the Tribe and "all other Seminole related entities." The Letter of Intent would be reduced to a "Definitive Agreement" after approval was obtained from STOFI's Board. The Agreement would be governed by the laws of the State of Florida and the venue would be in Broward County, Florida. The Letter of Intent was signed by STOFI's board president and Mobile Mike.

The Board passed a resolution in December 2011, which ratified the Letter of Intent. The resolution states the purpose of the Joint Venture is to provide promotional activities "to Tribal entities and events as well as to

parties not affiliated with [STOFI]." The resolution reiterated the Letter of Intent's essential terms and stated that STOFI's "sole financial exposure will be to contribute the organizational expenses of the venture." STOFI's president was authorized to take all necessary steps to execute the Definitive Agreement.

Neither the Letter of Intent nor the Board's Resolution addressed waiver of sovereign immunity.

In January 2012, the Production Company and STOFI entered into a Regulations and Operating Agreement for the Joint Venture, which was signed by STOFI's president and Mobile Mike. Article VIII, Section 1 of the Agreement is the only provision relevant to this appeal. It confirms that the Operating Agreement is governed by the laws of the State of Florida, without regard to conflict of law principles.

The parties submitted two different versions of the Agreement to the trial court. Mobile Mike's version states that "[t]he parties waive any rights pursuant to any available sovereign or governmental immunity." STOFI's version contained no such immunity waiver.

*The Complaint*

Mobile Mike, on behalf of the Production Company and the Joint Venture, filed a ten-count complaint against STOFI and individual tribal members involved with the Agreement, asking for injunctive relief and damages.

Mobile Mike claimed to have invested hundreds of thousands of dollars into the Joint Venture. By July 2012, Mobile Mike asserted that STOFI, the Tribe, and Seminole Gaming had ceased sending work to the Joint Venture, diverting the work to a tribal member who owned a competing advertising agency. No further payments pursuant to the Operating Agreement were made to the Joint Venture and in June 2013 Mobile Mike was officially "advised" that the Operating Agreement would not be honored.

*The Motion to Dismiss*

The Defendants moved to dismiss the complaint for lack of subject matter jurisdiction, asserting the claims were barred by sovereign immunity, pursuant to section 17 of the Act. According to the motion, the sovereign immunity waiver found in Mobile Mike's version of the Operating Agreement was a "*single* boilerplate sentence that Mobile Mike fraudulently introduced into the Agreement after execution and without STOFI's or [the president's] knowledge."

In the alternative, the motion contended that any waiver of immunity was "unauthorized and ineffectual" because the Board had not expressly waived immunity. The motion pointed out that during the current president's tenure, STOFI had never waived immunity in connection with any commercial dealing without a Board resolution, which must be enacted at a public Board meeting and specify the nature and scope of the waiver. The motion claimed the Board did not authorize the president to execute an agreement waiving immunity.

*Motion to Dismiss Hearing and Circuit Court Order*

A five-day evidentiary hearing was held on STOFI's Motion to Dismiss. Much of the testimony focused on which version of the Operating Agreement was authentic. This testimony is largely irrelevant to this appeal because the trial court treated Mobile Mike's version of the Operating Agreement as true. The trial court decided the case as a matter of law, focusing on whether the waiver in Mobile Mike's version was sufficient to eliminate STOFI's sovereign immunity.

The trial court issued an extensive order granting in part STOFI's motion to dismiss. The order noted that the trial court could properly consider evidence outside the four corners of the complaint when considering a motion to dismiss on sovereign immunity grounds. As conclusions of fact, the trial court found that STOFI's Charter and Bylaws provide that the Board alone can waive sovereign immunity and the president does not have authority to waive [immunity], absent explicit authorization from the Board. No immunity waiver was ever approved by the Tribal Council, pursuant to the Tribal Ordinance, or by STOFI Board resolution. The Letter of Intent was the only written agreement ratified by the Board, and it did not contain a sovereign immunity waiver.

As a conclusion of law, the order determined that courts draw no distinction between the Tribe and the commercial activity of STOFI; therefore, "STOFI is entitled to sovereign immunity absent a waiver in their charter, valid waiver in the contract or through an Act of Congress waiving immunity."

Once STOFI demonstrated it was entitled to sovereign immunity, the burden shifted to Mobile Mike to prove immunity had been waived. The court reasoned that a "proper and enforceable waiver of sovereign immunity is dependent on compliance with the sovereign entity's rules for waiving immunity." STOFI's Bylaws provide that immunity can be waived only with Board authority and nothing submitted showed such approval. The court determined the purported immunity waiver in Mobile Mike's version of the Agreement also violated STOFI's Charter, which requires a waiver to pledge income or chattels in the event a judgment, lien or

attachment is levied against STOFI. The immunity waiver contained no such pledge.

While the court made no finding as to which version of the Agreement was the actual contract signed by the parties, it determined as a matter of law that the purported waiver of immunity was "void and ineffective against STOFI and the STOFI defendants acting within the scope of their duties on the council." The order concluded that the trial court lacked subject matter jurisdiction, based on STOFI's sovereign immunity, and dismissed all counts against STOFI.

### *Sovereign Immunity Protects a Section 17 entity such as STOFI, Absent a Valid Contractual Waiver*

Native American sovereign immunity is a "consideration [which] determines whether a court has jurisdiction to hear an action." *Taylor v. Ala. Intertribal Council Title IV J.T.P.A.*, 261 F.3d 1032, 1034 (11th Cir. 2001). The United States Supreme Court has held that Native American "tribes enjoy immunity from suit on contracts, whether those contracts involve governmental or commercial activities and whether they were made on or off a reservation." *Kiowa Tribe of Okla. v. Mfg. Techs., Inc.*, 523 U.S. 751, 760 (1998). "As a matter of federal law, [a Native American] tribe is subject to suit only where Congress has authorized the suit or the tribe has waived its immunity." *Id.* at 754.

The Indian Reorganization Act of 1934 was Congress's first attempt to incorporate Native American tribes into the United States' legal and political systems as separate political entities. Alex Tallchief Skibine, *Redefining the Status of Indian Tribes Within "Our Federalism": Beyond the Dependency Paradigm*, 38 CONN. L. REV. 667, 675 (2006). The Act authorized the tribes to adopt constitutions, with the Secretary of the Department of the Interior's approval, and one of the Act's key purposes was to encourage tribal economic development. Matthew L.M. Fletcher, *The Supreme Court and Federal Indian Policy*, 85 NEB. L. REV. 121, 144 (2006).

Under sections 16 and 17, the Act provides two different ways for Native American tribes to organize and operate. *Houghtaling v. Seminole Tribe of Fla.*, 611 So. 2d 1235, 1236 (Fla. 1993). "Section 16 prescribes how tribes are to operate as a government" while "section 17 prescribes their authority to operate as a business entity." *Id.* at 1237. It is settled law that Section 16 entities are granted sovereign immunity unless the tribe or Congress waives such immunity. *See Md. Cas. Co. v. Citizens Nat'l Bank of W. Hollywood*, 361 F.2d 517, 520 (5th Cir. 1966) [hereinafter *Maryland Casualty*] (citing *United States v. U.S. Fid. & Guar. Co.*, 309 U.S. 506, 512 (1940)).

Section 17 of the Act provides:

> The Secretary of the Interior may, upon petition by any tribe, issue a charter of incorporation to such tribe: *Provided*, That such charter shall not become operative until ratified by the governing body of such tribe. Such charter may convey to the incorporated tribe the power to purchase, take by gift, or bequest, or otherwise, own, hold, manage, operate, and dispose of property of every description, real and personal, including the power to purchase restricted Indian lands and to issue in exchange therefor interests in corporate property, and such further powers as may be incidental to the conduct of corporate business, not inconsistent with law; but no authority shall be granted to sell, mortgage, or lease for a period exceeding twenty-five years any trust or restricted lands included in the limits of the reservation. Any charter so issued shall not be revoked or surrendered except by Act of Congress.

25 U.S.C. § 477 (2012). Notably, this section does not address sovereign immunity.

The Florida Supreme Court has recognized that the purpose of section 17 is to create a separate entity from the tribal political body that is "more capable of obtaining credit and otherwise expediting the business of the tribe, while removing the possibility of federal liability for activities of that nature. As a result, the powers, privileges and responsibilities of these tribal organizations materially differ [from Section 16 entities]." *Houghtaling*, 611 So. 2d at 1237-38 (quoting the Solicitor of the Department of the Interior in opinion M-36515, 65 I.D. 483, 484 (1958)). In Florida, state courts lack subject matter jurisdiction over a Section 16 entity unless that entity has waived sovereign immunity or it has been rescinded by Congress. *Id.* at 1239. Additionally, a Section 17 entity can be sued only if allowed by its corporate charter. *Id.* As will be discussed below, this last statement makes sense only if the *Houghtaling* court presumed that Section 17 entities are entitled to sovereign immunity under the Act.

### STOFI's Sovereign Immunity

"There are three ways [a Native American] tribe may incorporate: Under the federal statute, 25 U.S.C. § 477 [section 17 of the Act]; under state law; and under tribal law." *Inglish Interests, LLC v. Seminole Tribe of Fla., Inc.*, No. 2:10-CV-367-Ftm-29DNF, 2011 WL 208289, *3 (M.D. Fla. Jan. 21, 2011). The Tribe incorporated STOFI under section 17 of the Act and was

granted a corporate charter in 1957 to form a "Federal corporation" with perpetual succession. *Id.* at *1-*2 (quoting Art. III, § 1 of STOFI's charter).

STOFI possesses only those powers granted by the Secretary of the Interior by the terms of its charter; the Act itself grants no powers to corporate tribal entities. *Id.* at *1 (citing *Maryland Casualty*, 361 F.2d at 520). The Department of the Interior issued a corporate charter to STOFI "in order to further the economic development of the Tribe, secure an assured economic independence for Tribe members, and provide for the proper exercise of various functions by the Tribe which had previously been performed by the Department of the Interior." *Id.* at *2.

Mobile Mike asserts it is well established that corporate tribal entities have no inherent immunity of their own. While several jurisdictions have found that certain corporate tribal entities were not protected by sovereign immunity, Mobile Mike's assertion is an overstatement of the law. *See Trudgeon v. Fantasy Springs Casino,* 84 Cal. Rptr. 2d 65, 69 (1999); *Veeder v. Omaha Tribe of Neb.*, 864 F. Supp. 889 (N.D. Iowa 1994); *Wippert v. Blackfeet Tribe*, 859 P.2d 420, 427 (Mont. 1993), *overruled on other grounds, Green v. Gerber*, 303 P.3d 729 (Mont. 2013). These cases are distinguishable because they either involve Section 17 entities that waived immunity in their corporate charter, or, like the tribal casino in *Trudgeon,* were governmental entities *not* incorporated under section 17 of the Act. In fact, it is more accurate to say that the jurisdictions confronting Section 17 entities have found they were protected by sovereign immunity, unless that immunity was expressly waived by the corporate charter or by agreement.

*Federal Precedent Supporting Section 17 Immunity*

No Florida state court has directly addressed whether STOFI has sovereign immunity. We find persuasive the analyses of several federal courts that have held Section 17 entities have immunity, unless such immunity was waived by contract.

Courts should construe statutes liberally in favor of Native American tribes, so ambiguous provisions should be interpreted to their benefit. *Memphis Biofuels, LLC v. Chickasaw Nation Indus., Inc.*, 585 F.3d 917, 921 (6th Cir. 2009) (citing *Montana v. Blackfeet Tribe of Indians*, 471 U.S. 759, 766 (1985)); *see also Sanderlin v. Seminole Tribe of Fla.*, 243 F.3d 1282, 1285 (11th Cir. 2001). The Sixth and Ninth Circuits have held that section 17's silence regarding sovereign immunity should not be construed as abrogating such immunity. *See Memphis Biofuels*, 585 F.3d at 920-21; *see also Am. Vantage Cos., Inc. v. Table Mountain Rancheria*, 292 F.3d 1091, 1099 (9th Cir. 2002) ("A tribe that elects to incorporate does not automatically waive its tribal sovereign immunity by doing so.").

The Sixth Circuit concluded "that the better reading of Section 17 is that it creates 'arms of the tribe' that do not automatically forfeit tribal-sovereign immunity." *Memphis Biofuels*, 585 F.3d at 921. However, a tribe may choose to expressly waive its sovereign immunity either in the Section 17 entity's charter or by agreement. *Id.* The Tenth circuit agrees, holding that immunity for subordinate economic tribal entities is necessary because it "directly protects the sovereign Tribe's treasury, which is one of the historic purposes of sovereign immunity in general." *Breakthrough Mgmt. Grp., Inc. v. Chukchansi Gold Casino & Resort*, 629 F.3d 1173, 1183 (10th Cir. 2010) (quoting *Allen v. Gold Country Casino*, 464 F.3d 1044, 1047 (9th Cir. 2006)).

In 1966, the Fifth Circuit held that STOFI was immune from a garnishment proceeding. *Maryland Casualty*, 361 F.2d at 522. The court presumed STOFI had immunity and looked to its charter to see if that immunity had been waived. *Id.* at 521. At that time, the charter contained a "sue and be sued"[4] clause, which, significantly, contained qualifying language still found in the current charter provision. *Id.* Section 9 provided STOFI could

> sue or be sued; but the grant or exercise of such power to sue and to be sued shall not be deemed a consent by the said corporation or the United States to the levy of any judgment, lien or attachment upon the property of the Seminole Tribe of Florida, Inc., other than income or chattels especially pledged or assigned.

*Id.*

This limiting language was written into the charter by the Secretary of the Interior to protect Tribal property that was not pledged or assigned, so the provision should be liberally construed and "all doubtful expressions therein resolved in favor of the Seminole Tribe." *Id.* "To construe the immunity to suit as not applying to suits on liabilities arising out of private transactions would defeat the very purpose of Congress in not relaxing the immunity. . . ." *Id.* at 521-52. Because garnishment is akin to attachment, the court found that even with the "sue and be sued" language, STOFI was immune from the garnishment proceeding. *Id.* at 522.

In 2011, the Middle District of Florida also concluded that Section 17 entities, and STOFI specifically, were entitled to sovereign immunity. *Inglish*, 2011 WL 208289, at *5. The opinion relied on Eleventh Circuit precedent that found the Tribe does not lose its sovereign immunity simply

---

[4] As is indicated above, this "sue and be sued" language was removed from STOFI's Charter in 1996, well before the Operating Agreement was signed.

by incorporating under Section 17 and Native American sovereign immunity has been extended by case law "to entities other than the literal 'tribe.'" *Id.* (citing T*aylor*, 261 F.3d at 1036). The court acknowledged that Congress knows how to abrogate sovereign immunity when that is its intent, so failure to expressly grant immunity in section 17 does not mean that such immunity is waived. *Id.*

*Inglish* observed that while a Section 17 entity is protected by sovereign immunity, its corporate charter may waive that immunity. *Id.* at *6. STOFI's charter presumes STOFI has sovereign immunity and does not waive or consent to suit. *Id.* A tribal corporation may also expressly waive immunity by agreement, which STOFI did not do, so the court determined it lacked subject matter jurisdiction over the case. *Id.* (citing *Tamiami Partners Ltd. ex rel Tamiami Dev. Corp. v. Miccosukee Tribe of Indians of Fla.*, 63 F.3d 1030, 1048 (11th Cir. 1995)).

The Southern District of Florida has reached the same conclusion as *Inglish*. *See Lujen Brands, LLC v. Seminole Tribe of Fla., Inc.* No. 0:14-cv-60679 (Sept. 18, 2014). In *Lujen,* the court considered whether STOFI had sovereign immunity and if so, what impact that would have on the merits discovery in the case. *Id.* STOFI argued that "because it has sovereign immunity unless it waives such immunity in its Charter or by contract, the only proper jurisdictional discovery against it concerning sovereign immunity goes to waiver, not to whether it is a subordinate economic entity of the [Tribe]." *Id.* Agreeing, the court found that based on binding federal precedent, STOFI was "entitled to sovereign immunity unless and until it waives such immunity." *Id.* (citing *Maryland Casualty*, 361 F.2d at 520-22 and *Inglish*, 2011 WL 28289 at *5-*6).

### Florida Precedent Addressing STOFI's Immunity

This Court has held that STOFI was entitled to sovereign immunity from the state's attempt to collect taxes. *Askew v. Seminole Tribe of Fla., Inc.*, 474 So. 2d 877 (Fla. 4th DCA 1985). We found the fact that STOFI was engaged in a commercial enterprise, as opposed to governmental, was "not material," because "[i]t is in such enterprises and transactions that the [Native American] tribes and the [Native Americans] need protection." *Id.* at 880. It stands to reason that if STOFI had sovereign immunity protection against state taxes then STOFI has immunity in all commercial endeavors, unless otherwise waived by contract.

Additionally, the Florida Supreme Court's holding in *Houghtaling* would be illogical if STOFI did not have sovereign immunity. The court acknowledged that the purpose of section 17 is to remove the possibility of federal liability for tribal economic activities. *Houghtaling,* 611 So. 2d at 1237-38. The court held that a Section 17 entity could be sued only if

allowed by its corporate charter. *Id.* at 1240. This statement presupposes that such an entity is granted immunity by the Act.

To summarize, it is undisputed that STOFI's Charter contains no "sue and be sued" clause or other waiver of sovereign immunity. We agree with those courts concluding that absent such waiver, Section 17 entities like STOFI are protected by sovereign immunity, a position that coincides with the policy behind granting immunity to tribal organizations.

### The Circuit Court Correctly Concluded That There Was No Valid Waiver of STOFI's Sovereign Immunity

A motion to dismiss is a proper procedural vehicle to challenge jurisdiction based on sovereign immunity. *See Houghtaling,* 611 So. 2d at 1236; *Seminole Police Dep't v. Casadella*, 478 So. 2d 470 (Fla. 4th DCA 1985); *see also Venetian Salami Co. v. Parthenais*, 554 So. 2d 499, 503 (Fla. 1989) (recognizing the necessity of a "limited evidentiary hearing in order to determine the jurisdiction issue," in case involving question of personal jurisdiction). The burden was on Mobile Mike to establish a waiver of STOFI's immunity. *See Seminole Tribe of Fla. v. McCor*, 903 So. 2d 353, 360 (Fla. 2d DCA 2005) (stating once the Tribe demonstrated through affidavits that it was entitled to sovereign immunity, the burden shifted to the other party to rebut those affidavits); *Cupo v. Seminole Tribe*, 860 So. 2d 1078, 1079 (Fla. 1st DCA 2003) (affirming dismissal of claim against Tribe for lack of subject matter jurisdiction where claimant "failed to show a clear, express and unmistakable waiver of sovereign immunity").

We agree with STOFI that Florida and federal case law supports the requirement that a proper and enforceable waiver of sovereign immunity comply with the sovereign entity's rules for waiving immunity. *See Houghtaling,* 611 So. 2d at 1239-40; *Seminole Tribe of Fla. v. Ariz*, 67 So. 3d 229 (Fla. 2d DCA 2010); *Memphis Biofuels*, 585 F.3d at 921.

We follow the Sixth Circuit's approach in *Memphis Biofuels*, which looked to the entity's charter to determine whether there had been a waiver of sovereign immunity. *Memphis Biofuels*, 585 F.3d at 922. The charter required board approval and, without such approval, immunity remained intact. *Id.* Similar to the present situation, a provision in the signed contract purported to waive all immunities for both parties, but it was undisputed that the board did not pass a resolution waiving immunity, so the waiver was found invalid. *Id.* As discussed above, courts look to a Section 17 entity's charter to determine if the entity has agreed to sue and be sued; it follows that a court should also look to the charter to determine how immunity may be waived by contract.

STOFI's Bylaws require that a sovereign immunity waiver be properly authorized by the Board through a resolution. Thus, STOFI's president did not have the actual authority to waive immunity on his own. In addition, STOFI's Charter requires not only a clear and express waiver in a contract, but also that "such waiver shall not be deemed a consent by the said corporation or the United States to the levy of any judgment, lien or attachment upon the property of [STOFI], other than income or chattels especially pledged or assigned pursuant to such contract." No such language was included in Mobile Mike's version of the Agreement. As noted by the Fifth Circuit in *Maryland Casualty*, this limiting language was written into the Charter by the Secretary of the Interior to protect Tribal property that was not pledged or assigned. 361 F.2d at 521-22. For this reason, the provision should be liberally construed and "all doubtful expressions therein resolved in favor of the Seminole Tribe." *Id.*

### Conclusion

Even assuming the validity of the waiver provision in Mobile Mike's version of the operating agreement, we agree with the trial court that waiver was insufficient as a matter of law because it failed to comply with STOFI's Charter and Bylaws.

Based on the foregoing, we affirm the circuit court's order granting the motion to dismiss.

DAMOORGIAN and KLINGENSMITH, JJ., concur.

\* \* \*

**Not final until disposition of timely filed motion for rehearing.**