COMANCHE NATION OF OKLAHOMA v. COFFEY



 

 
 
 
 
 
 Skip to Main Content
 Accessibility Statement
 
 
 
 
 
 Help
 Contact Us
 
 
 
 
 e-payments
 Careers
 
 
 
 
 
 
 
 
 
 
 
 Home
 Courts
 Decisions
 Programs
 News
 Legal Research
 Court Records
 Quick Links
 
 
 
 
 
 OSCN Found Document:COMANCHE NATION OF OKLAHOMA v. COFFEY

 

 
 



 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 

 
 COMANCHE NATION OF OKLAHOMA v. COFFEY
2020 OK 90
Case Number: 117267
Decided: 11/17/2020
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2020 OK 90, __ P.3d __

 
NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

COMANCHE NATION OF OKLAHOMA, a Federally Recognized Indian Tribe, ex rel. COMANCHE NATION TOURISM CENTER, Plaintiff/Appellee,
v.
WALLACE COFFEY, Defendant/Appellant.

ON APPEAL FROM THE DISTRICT COURT OF COMANCHE COUNTY,
STATE OF OKLAHOMA
HONORABLE IRMA NEWBURN, DISTRICT JUDGE

¶0 Plaintiff/Appellant Comanche Nation of Oklahoma, a federally recognized Indian Tribe, ex rel. Comanche Nation Tourism Center, filed a lawsuit seeking a declaratory judgment that Defendant/Appellant Wallace Coffey was indebted to it for the amount of the outstanding balance on an open account. The trial court granted Coffey's motion to dismiss for lack of subject matter jurisdiction and dismissed the case with prejudice. Thereafter, Coffey filed an application for prevailing party attorney fees pursuant to 12 O.S.2011 § 936. The trial court denied Coffey's request for attorney fees, finding he was not the prevailing party because he had not prevailed on the merits of the action. Coffey appealed the order denying attorney fees, and this Court retained the appeal. We hold a defendant is not a "prevailing party" within the meaning of 12 O.S. § 936 when the court dismisses the action with prejudice for lack of subject matter jurisdiction. The trial court's order denying Coffey's motion for attorney fees is affirmed.

ORDER OF DISTRICT COURT IS AFFIRMED.

Michael Salem, Salem Law Offices, Norman, Oklahoma, for Appellant.

KANE, J.:

I. FACTS AND PROCEDURAL HISTORY

¶1 Comanche Nation filed the underlying lawsuit originally seeking a money judgment against Wallace Coffey on October 11, 2016. Comanche Nation alleged Coffey had purchased goods from it on an open account and failed to pay the balance of $18,415.09. Comanche Nation amended its petition on November 7, 2016, alleging the same facts but seeking a declaratory judgment that Coffey was indebted to it for the amount of the outstanding balance on the open account and that Coffey was obligated to pay Comanche Nation's reasonable expenses for bringing and maintaining the action.

¶2 Coffey entered a special appearance and filed a motion to dismiss for lack of subject matter jurisdiction on February 8, 2017. Coffey argued that at all relevant times he was acting in his official capacity as Chairman of Comanche Nation and was, therefore, entitled to assert the defense of tribal sovereign immunity.[1] The trial court granted Coffey's motion to dismiss on November 16, 2017 and entered a final order dismissing the case with prejudice on February 15, 2018. In its order, the trial court found that all disputed transactions occurred on Tribal trust land. The trial court concluded that Tribal trust land is "Indian country" within the meaning of 18 U.S.C. § 1151 and, therefore, it lacked jurisdiction over a controversy involving Indian parties relating to conduct occurring in Indian country. Comanche Nation did not appeal the final order dismissing the case with prejudice.

¶3 On March 16, 2018, Coffey filed an application for attorney fees pursuant to 12 O.S.2011 § 936. The trial court found Coffey was not entitled to attorney fees, because he "was not a 'prevailing party' upon the merits of the cause of action." The Journal Entry denying Coffey's application for attorney fees was filed on July 26, 2018.[2] Coffey appealed.

¶4 This Court granted Coffey's motion to retain appeal. Comanche Nation has not entered an appearance or filed a Response to the Petition in Error. Therefore, the appeal will be decided without a response or additional record.[3]

II. STANDARD OF REVIEW

¶5 This appeal presents issues of statutory construction and whether a party is entitled to attorney fees under 12 O.S. § 936. Both are questions of law. See Fanning v. Brown, 2004 OK 7, ¶ 8, 85 P.3d 841 (statutory construction); Finnell v. Seismic, 2003 OK 35, ¶ 7, 67 P.3d 339 (entitled to attorney fees). Questions of law are reviewed de novo. See Fanning, 2004 OK 7, ¶ 8. Appellate courts have plenary, independent and nondeferential authority to determine whether the trial court erred in its legal rulings. Id.

III. DISCUSSION

A. Jurisdiction to Adjudicate Application for Attorney Fees

¶6 This Court has a duty to inquire into its own jurisdiction and the jurisdiction of the lower court. See Hall v. GEO Group, Inc., 2014 OK 22, ¶ 12, 324 P.3d 399. As an initial matter, we find the trial court had jurisdiction to adjudicate Coffey's application for attorney fees despite its lack of subject matter jurisdiction over the merits of the case. It follows that this Court has jurisdiction to review the trial court's order denying attorney fees.

¶7 Comanche Nation did not appeal from the underlying order sustaining Coffey's dispositive motion and dismissing the case for lack of subject matter jurisdiction, and that stands as the law of the case. The trial court had the inherent authority and duty to adjudicate whether it had jurisdiction over the matter before it. See Dutton v. City of Midwest City, 2015 OK 51, ¶ 15, 353 P.3d 532. Because the trial court had jurisdiction to determine it lacked subject matter jurisdiction and to enter an order dismissing the case, it also had jurisdiction to rule on Coffey's request for prevailing party attorney fees. The trial court's order denying attorney fees was ancillary to the underlying dismissal. Even if the trial court lacks subject matter jurisdiction over the merits of the case, it retains jurisdiction to adjudicate an application for attorney fees and costs. See Brown v. Desert Christian Ctr., 122 Cal. Rptr. 3d 590, 594-596 (Cal. Ct. App. 2011) (costs incidental to judgment of dismissal); New v. Dumitrache, 604 S.W.3d 1, 20 (Tenn. 2020) (attorney fees incurred in determining the trial court lacked jurisdiction); see also In re De-Annexation of Certain Real Property from the City of Seminole, 2007 OK 95, ¶¶ 18-22, 177 P.3d 551 (reviewing the correctness of the trial court's order denying attorney fees after holding the trial court lacked subject matter jurisdiction over the merits of the case).

¶8 Applications for attorney fees and costs are routinely filed after a case has been dismissed. The parties have 30 days after the filing of the judgment, decree, or appealable order to file an application for attorney fees and costs. See 12 O.S.Supp.2012 § 696.4(B); Haggard v. Haggard, 1998 OK 124, ¶ 13, 975 P.2d 439 ("If a party files a motion for new trial following the entry of a judgment, decree, or appealable order, we interpret § 696.4 to mean that the party will have thirty days after the filing of the order disposing of her motion for new trial within which to file her attorneys' fee application."). The February 15, 2018 order dismissing the case for lack of subject matter jurisdiction was an appealable order. Coffey timely filed his application for attorney fees on March 16, 2018. The trial court's prior order dismissing the case for lack of subject matter jurisdiction did not inhibit Coffey's right to request attorney fees or the trial court's power to rule on such a request.

B. Prevailing Party

¶9 Title 12, § 936 provides, in pertinent part:

In any civil action to recover for labor or services rendered, or on an open account, a statement of account, account stated, note, bill, negotiable instrument, or contract relating to the purchase or sale of goods, wares, or merchandise, unless otherwise provided by law or the contract which is the subject of the action, the prevailing party shall be allowed a reasonable attorney fee to be set by the court, to be taxed and collected as costs.

12 O.S.2011 § 936(A) (emphasis added). The most obvious prevailing party is the single party for whom judgment is rendered after a trial on the merits. Here, the case was disposed of without a judgment for either party. The trial court dismissed the action with prejudice. The issue on appeal is whether a defendant is the "prevailing party" when the court dismisses the action with prejudice for lack of subject matter jurisdiction.

¶10 Statutes allowing an award of attorney fees are to be strictly construed. See Beard v. Richards, 1991 OK 117, ¶ 12, 820 P.2d 812, 816. The fundamental purpose of statutory construction is to ascertain and give effect to the intent of the Legislature. See In re City of Durant, 2002 OK 52, ¶ 13, 50 P.3d 218. To do this, we first look to the language of the statute. Id. If the statutory language is clear and unambiguous, this Court must apply the plain and ordinary meaning of the words. Id. Only when the legislative intent cannot be determined from the statutory language due to ambiguity or conflict should rules of statutory construction be employed. See Keating v. Edmondson, 2001 OK 110, ¶ 8, 37 P.3d 882.

¶11 We are guided by our prior decisions construing "prevailing party," as used in various attorney fees statutes. Carter v. Rebrecht, 1940 OK 500, 108 P.2d 546, involved the then-effective usury statute. In an action to recover the penalty for usury, the prevailing party was entitled to a reasonable attorney fee. See 15 O.S.1931 § 268. This Court found the defendant was not the prevailing party where the plaintiff dismissed the action without prejudice before trial. See Carter, 1940 OK 500, ¶ 13, 108 P.2d at 548. In doing so, we defined "prevailing party" as the party who prevails on the merits as determined by final judgment:

[T]he court has regarded as the prevailing party, the party who prevailed on the merits, and has regarded as the losing party, and the party subject to the additional penalty of an attorney's fee for his adversary, the party who lost upon the merits. That is, it appears to have been the policy to tax the attorney's fee only in those cases where the other party was determined by final judgment to be the losing party on the issue of the usury penalty. And while we have not before considered the question of the claim for an attorney's fee where the usury claim was dismissed without prejudice before trial, we are inclined to the view that a person so dismissing such claim should not be held to be the losing party on the issue of usury. He has not finally lost upon that issue for he might subsequently refile his action and might there prevail on the merits. While a defendant might be said to prevail on the pleadings or in the action when the plaintiff dismisses without prejudice, yet he has not finally prevailed upon the issue tendered in plaintiff's petition.

Carter, 1940 OK 500, ¶ 11, at 548.

¶12 In Swan-Sigler, Inc. v. Black, 1966 OK 90, 414 P.2d 300, we looked at statutory attorney fees in a lien foreclosure. Title 42, § 176 provided: "In an action brought to enforce any lien the party for whom judgment is rendered shall be entitled to recover a reasonable attorney's fee, to be fixed by the court, which shall be taxed as costs in the action." 42 O.S.1961 § 176. Although this particular fees statute does not use the term "prevailing party," we observed the interchangeability of "the party for whom judgment is rendered" and "prevailing party":

We believe that the use of the words "prevailing party" by this court . . . meant merely the one for whom judgment is rendered, meaning, of course, a judgment upon the validity or invalidity of the lien. In the present case no judgment was entered for or against anyone adjudging that the plaintiff did or did not have a valid lien against the property of the defendants . . . . The issue of the validity of the lien was removed from this lawsuit by the filing of a voluntary dismissal by the plaintiff.

Swan-Sigler, 1966 OK 90, ¶ 7, 414 P.2d at 302. We found the defendants were not prevailing parties where the plaintiff dismissed the case. See id. ¶ 7, at 301-302.

¶13 In General Motors Acceptance Corp. v. Carpenter, 1978 OK 39, 576 P.2d 1166, we relied on our decisions in Carter and Swan-Sigler. The attorney fees statute for a replevin action provided: "The judgment rendered in favor of the prevailing party in such action may include a reasonable attorney fee to be set by the court, to be taxed and collected as costs." 12 O.S.Supp.1977 § 1580. We found "the right to attorney fees, taxed as costs, attaches only on behalf of a party who prevails on the merits." General Motors, 1978 OK 39, ¶ 4, 576 P.2d at 1167.

¶14 This Court reaffirmed our definitions of "prevailing party" in Underwriters at Lloyd's of London v. North American Van, 1992 OK 48, 829 P.2d 978. Title 12, § 940 provided, in pertinent part:

In any civil action to recover damages for the negligent or willful injury to property and any other incidental costs related to such action, the prevailing party shall be allowed reasonable attorney's fees, court costs and interest to be set by the court and to be taxed and collected as other costs of the action.

12 O.S.1981 § 940(A). After reviewing this Court's "prevailing party" jurisprudence, we held: "Our interpretation is that 'prevailing party' as used in § 940 of Title 12 is the party for whom judgment is rendered." Underwriters, 1992 OK 48, ¶ 10, 829 P.2d at 981. The jury returned a verdict finding defendant liable for negligence. See id. ¶ 10, at 981. The defendant appealed the amount of damages but did not appeal the finding of negligence. Id. The 10th Circuit Court of Appeals reduced the amount of damages. Id. This Court concluded that, although the defendant was successful in limiting the plaintiff's damages, it did not prevail on the claim for negligent injury to property. Id. Because the successful defense did not result in a judgment for the defendant, it was not the prevailing party. Id. ¶ 11, at 981.

¶15 Coffey cites Professional Credit Collections, Inc. v. Smith, 1997 OK 19, 933 P.2d 307, as the sole legal authority supporting his argument that by securing the dismissal with prejudice he is the prevailing party. Coffey argues that he was granted affirmative relief when the case was dismissed with prejudice and, according to Professional Credit, is entitled to attorney fees.

¶16 In Professional Credit, a collection agent secured a default judgment against the formerly married defendants and sought to garnish the wife's wages. See id. ¶ 4, at 309. The trial court later vacated the default judgment and allowed the wife additional time to answer. Id. ¶ 5, at 309. Before the wife filed an answer, the collection agent dismissed her as a defendant. Id. The wife then sought attorney fees pursuant to 12 O.S.1991 § 936. Id. ¶ 7, at 309. The trial court denied the request, and the Court of Civil Appeals affirmed. Id. ¶ 7, at 309-310.

¶17 On certiorari, this Court stated:

The definition of a prevailing party cannot narrowly be confined to one who obtains judgment after a trial on the merits. The operative factor under § 936 is success, not the particular stage at which success is achieved. When [the wife] prevailed in the judgment's vacation, she, as recipient of affirmative relief, clearly became the successful party.

Prof'l Credit, 1997 OK 19, ¶ 12, 933 P.2d at 311 (footnote omitted) (emphasis original). In defining prevailing party, we focused on whether "affirmative relief" had been granted to the defendant, rather than our traditional definitions.[4] While the opinion does not explicitly address why an expanded or alternative definition was applied, from the outset, this Court recognized the interplay of 12 O.S. § 684 and 12 O.S. § 936 present in Professional Credit. See id. ¶ 8, at 310. At the time, 12 O.S.1991 § 684 provided, in pertinent part: "A plaintiff may, on the payment of costs and without an order of court, dismiss any civil action brought by him at any time before a petition of intervention or answer praying for affirmative relief against him is filed in the action." (emphasis added). In Professional Credit, we reasoned that "[t]he test for an effective cost-escaping § 684 voluntary dismissal does not depend on whether a prevailing party has yet been determined. Instead, the key is whether, before plaintiff's voluntary dismissal, the defendant has requested affirmative relief against the plaintiff." 1997 OK 19, ¶ 9, 933 P.2d at 310. Harmonizing § 684 and § 936, we determined that the wife's motion to vacate the default judgment was a request for affirmative relief and the trial court's ruling in the wife's favor made her a prevailing party for purposes of 12 O.S. § 936. See id. ¶ 10, at 310. "[The collection agent's] statutory power to dismiss an action does not include the authority to wipe the slate clean of prior orders in the case which bear directly on its counsel-fee liability." Prof'l Credit, 1997 OK 19, ¶ 12, 933 P.2d at 311 (emphasis original).

¶18 For more than half a century, we consistently interpreted "prevailing party" as one who prevails on the merits of the action or for whom final judgment is rendered. Just five years after Underwriters, we appeared to have reversed course in Professional Credit. The Court determined that the trial court's interlocutory decision to vacate the default judgment against the defendant, coupled with the plaintiff's voluntary dismissal, elevated the defendant to prevailing party status. The result was that, although the defendant had not prevailed on the merits or obtained a judgment in her favor, she was deemed the prevailing party for purposes of 12 O.S. § 936. This was an undeniable divergence from our prevailing party jurisprudence.

¶19 After Professional Credit, we quickly returned to our traditional understanding that a prevailing party is one who prevails on the merits or for whom final judgment is rendered.[5] In fact, in the 23 years since Professional Credit was decided, this Court has never cited it for the definition of "prevailing party." The Court of Civil Appeals has, likewise, been extremely hesitant to apply Professional Credit.[6] So much so, the case has been found to be controlling in only one reported decision, which presented facts nearly identical to those in Professional Credit.[7] Additionally, 12 O.S. § 684 has since been amended and the "affirmative relief" language relied on by this Court in Professional Credit has been removed from the statute.[8]

¶20 For these reasons, Professional Credit must be confined to its facts. The facts in this case are clearly distinguishable. Therefore, Professional Credit does not apply directly or by analogy. Furthermore, our decision in Professional Credit did not dismantle this court's long-standing interpretation that a "prevailing party" is one who prevails on the merits of the action or for whom final judgment is rendered.

¶21 Coffey argues he prevailed in the litigation insofar as the proceeding was improperly brought in state court. He is absolutely correct that he prevailed on his motion to dismiss. When the trial court granted the dismissal, it summarily disposed of the case. However, there is a critical distinction between prevailing on a dispositive motion that terminates the case and prevailing on the merits of the action. In Carter v. Rebrecht, 1940 OK 500, 108 P.2d 546, we said: "[A] defendant might be said to prevail on the pleadings or in the action when the plaintiff dismisses without prejudice, yet he has not finally prevailed upon the issue tendered in plaintiff's petition." Id. ¶ 11, at 548. Coffey did not finally prevail upon the issue tendered in Comanche Nation's amended petition. The issue tendered was whether Coffey was indebted to Comanche Nation for the amount of the outstanding balance on the open account. This issue was removed for determination when the trial court dismissed the case. The trial court never made a determination on the merits of Comanche Nation's declaratory judgment action. Rather, the trial court dismissed the case for lack of subject matter jurisdiction. A court does not have power to decide an issue on the merits or enter judgment if it does not have jurisdiction over the subject matter. No judgment was entered for or against any party in this case.[9]

¶22 Coffey has not prevailed on the merits nor has final judgment been rendered in his favor. Therefore, we hold Coffey is not a prevailing party for purposes of an award of attorney fees under 12 O.S. § 936.[10] We affirm the trial court's order denying Coffey's motion for attorney fees.

¶23 Our conclusion does not offend Coffey's right to equal access to the courts. See Prof'l Credit, 1997 OK 19, n.11, 933 P.2d 307, 311 (citing Thayer v. Phillips Petroleum Co., 1980 OK 95, 613 P.2d 1041). Title 12, § 936 does not treat the defendant who obtains a dismissal for lack of subject matter jurisdiction different from the plaintiff who successfully defeats the motion to dismiss. Neither is entitled to prevailing party attorney fees. The statute applies equally to the plaintiff or the defendant who ultimately prevails on the merits of the action or for whom final judgment is rendered.

¶24 Some may view it as inequitable to deny an award of attorney fees to the defendant when the plaintiff files a lawsuit in a court without jurisdiction over the subject matter. Whether a party is entitled to an award of attorney fees pursuant to 12 O.S. § 936 is not determined based on equitable considerations. "[E]ach litigant bears the cost of his/her legal representation and our courts are without authority to assess and award attorney fees in the absence of a specific statute or a specific contract therefor between the parties." Kay v. Venezuelan Sun Oil Co., 1991 OK 16, ¶ 5, 806 P.2d 648, 650. Statutes allowing the award of attorney fees are strictly construed. See Beard v. Richards, 1991 OK 117, ¶ 12, 820 P.2d 812, 816. Section 936 authorizes an award of attorney fees to the prevailing party and, for the reasons stated, Coffey is not the prevailing party.

IV. CONCLUSION

¶25 A prevailing party is one who prevails on the merits of the action or for whom final judgment is rendered. When the trial court dismissed the case with prejudice for lack of subject matter jurisdiction, it did not make a determination on the merits or enter final judgment. While Coffey was successful on his motion to dismiss, he has not prevailed on the merits nor has final judgment been rendered in his favor. Therefore, Coffey is not entitled to prevailing party attorney fees under 12 O.S. § 936.

ORDER OF THE DISTRICT COURT IS AFFIRMED.

CONCUR: Darby, V.C.J., Winchester, Edmondson, Colbert, and Kane, JJ.

CONCUR IN RESULT: Rowe, J.

DISSENT: Gurich, C.J., Kauger (by separate writing), and Combs (by separate writing), JJ.

FOOTNOTES

[1] Coffey is a former Chairman of Comanche Nation. He contends Comanche Nation filed this lawsuit to have him adjudicated a debtor and, as a result, precluded from running for office.

[2] The trial court also denied Coffey's motion to settle journal entry "as no judgment was entered upon the merits and the matter was dismissed for lack of jurisdiction of both the parties and the subject matter. A final order of dismissal was entered on the 15th day of February 2018." The denial of Coffey's motion to settle journal entry is not an issue on appeal.

[3] Coffey filed this appeal using the accelerated procedure for appeals from summary adjudication, see Okla.Sup.Ct.R. 1.36, rather than an appeal from a final order. It has proceeded as an accelerated appeal without objection.

[4] We did not rely on our prior interpretations of "prevailing party" in Carter, Swan-Sigler, General Motors, or Underwriters. Rather, this Court cited a federal district court decision that a plaintiff who has entered into a settlement of her Title VII claim is a prevailing party within the meaning of how that term is used in 42 U.S.C. § 2000e-5(k). See Prof'l Credit Collections, Inc. v. Smith, 1997 OK 19, n.6, 933 P.2d 307, 311 (citing Parker v. Matthews, 411 F.Supp. 1059 (U.S.D.C. 1976)). This Court also relied on Kelly v. Maupin, 1936 OK 344, ¶ 14, 58 P.2d 116, 118, where we held the right of a plaintiff to dismiss an action does not destroy a previous court order awarding attorney fees. See Prof'l Credit, 1997 OK 19, n.7, 933 P.2d at 311.

[5] See Tulsa Adjustment Bureau, Inc. v. Calnan, 2018 OK 60, ¶ 4, 427 P.3d 1050 ("To qualify as such, [12 O.S. § 936] requires TAB to have prevailed on those fee-bearing claims, meaning that TAB must first have obtained a judgment in its favor on those claims before it could be eligible for an attorney-fee award."); Sooner Builders & Invs., Inc. v. Nolan Hatcher Constr. Servs., LLC, 2007 OK 50, ¶ 17, 164 P.3d 1063 ("Coinciding with its ordinary meaning, 'prevailing party,' as a legal term of art, means the successful party who has been awarded some relief on the merits of his or her claim.") (emphasis original); Tibbetts v. Sight 'n Sound Appliance Ctrs., Inc., 2003 OK 72, ¶ 23, 77 P.3d 1042 ("[W]e hold that here without some judgment or judicial decree that has changed the relationship between the parties so that defendant is judicially required to do something, i.e., some enforceable judgment, plaintiffs cannot be said to be the successful or prevailing parties entitled to an award of attorney fees."); GRP of Tex., Inc. v. Eateries, Inc., 2001 OK 53, ¶ 7, 27 P.3d 95 ("When prevailing party status is the statutory prerequisite for awarding attorney's fees we have defined the prevailing party as the party possessing an affirmative judgment at the conclusion of the entire case."); Goodwin v. Durant Bank & Trust, 1998 OK 3, n.11, 952 P.2d 41 ("A prevailing party is one in whose favor judgment was rendered.").

[6] See, e.g., Waits v. Viersen Oil & Gas Co., 2020 OK CIV APP 2, 456 P.3d 1149 (survey of appellate decisions citing Professional Credit); Mill Creek Lumber & Supply Co. v. Bichsel, 2015 OK CIV APP 26, 347 P.3d 295 (holding the defendant is not the prevailing party when, after four years of litigation, the plaintiff dismissed the case with prejudice before trial); Austin Place, LLC v. Marts, 2015 OK CIV APP 2, 341 P.3d 693 (holding the defendant is not the prevailing party when the plaintiff dismissed the forcible the entry and detainer claim after the trial court pronounced its ruling that the claim was barred by the statute of limitations and signed a minute order but before final judgment was entered for the defendant); Hastings v. Kelley, 2008 OK CIV APP 36, 181 P.3d 750 (holding the defendant is not the prevailing party when the trial court denied the plaintiff's application for a temporary injunction and, thereafter, the plaintiff dismissed the suit without prejudice).

[7] See Capital One Bank v. Parsons, 2009 OK CIV APP 71, ¶ 5, 217 P.3d 636; see also Waits, 2020 OK CIV APP 2, ¶ 10 ("[T]o date, [Professional Credit] had not been positively applied in a prevailing party fee question outside of one factual situation -- a dismissal by the plaintiff after a default judgment was vacated.").

[8] The 2013 amendments to 12 O.S. § 684 removed the "affirmative relief" language. See 12 O.S.Supp.2013 § 684 (amended by Laws 2013, 1st Extr. Sess., SB 2, c. 13, § 6). The Court of Civil Appeals has questioned the continued viability of the "affirmative relief" rule from Professional Credit. See Waits, 2020 OK CIV APP 2, ¶¶ 10-14; Mill Creek, 2015 OK CIV APP 26, ¶ 20. In Waits, the Court of Civil Appeals aptly observed:

We find it evident that there are limits to the reach of Professional Credit. If the legislature intended that any form of relief granted before dismissal of a fee-bearing case, however minimal, makes the non-dismissing party a "prevailing party" entitled to full statutory attorney fees, it has had numerous opportunities to state so. Instead, the amendment of § 684 in 2013 required only that a party who dismisses after pretrial must pay costs upon refiling. If the Legislature intended the more punitive regime that an unrestricted application of Professional Credit would create (dismissal after any affirmative relief require the dismissing party to pay prevailing party fees) it had a perfect opportunity to do so when it amended § 684. It did not do so.

2020 OK CIV APP 2, ¶ 20 (emphasis original).

[9] We reject Coffey's suggestion that the dismissal with prejudice is the equivalent of a judgment on the merits. In Mill Creek, the Court of Civil Appeals accurately explained:

[T]he cases cited for this proposition do not hold that such a dismissal constitutes an adjudication on the merits of a plaintiff's claims for all legal purposes, including recovery of prevailing party attorney fees--they clearly hold that the legal effect of such a dismissal with prejudice is the same as that of a judgment in prohibiting a plaintiff (or any claiming party) from reasserting the dismissed claims.

2015 OK CIV APP 26, ¶ 22.

[10] Today's decision is consistent with the 10th Circuit Court of Appeals' decision in GHK Exploration Co v. Tenneco Oil Co., 857 F.2d 1388 (10th Cir. 1988).

KAUGER, J., with whom GURICH, C.J., joins, dissenting:

¶1 I am baffled by how the trial court or this Court can consider, much less award, attorney fees if the trial court does not have jurisdiction over either of the parties. Because this cause involved an Indian tribe, and an Indian citizen in Indian County, the trial court dismissed it because there was no subject matter jurisdiction of the parties. After the dismissal, the appellant, Wallace Coffey, sought an award of attorney fees as a prevailing party. Because of the litigants involved, the lack of subject matter jurisdiction is apparently based on the sovereign immunity of both parties. The questions become whether the parties waived sovereign immunity, and even if so, could the trial court award attorney fees after dismissing the cause because it lacked subject matter jurisdiction?

I.

OKLAHOMA IS NOT A PUBLIC LAW 280 STATE AND AS SUCH, OUR 
COURTS GENERALLY LACK SUBJECT MATTER JURISDICTION
OVER DISPUTES BETWEEN INDIAN TRIBES AND TRIBAL
OFFICIALS. 

¶2 This Court has previously clearly explained that Oklahoma lacks subject matter jurisdiction over disputes between Indian Tribes and Tribal Officials. Two prominent cases explaining this are Ahboah v. Housing Authority of Kiowa Tribe of Indians, 1983 OK 20, 660 P.2d 625 and Housing Authority of Seminole Nation v. Harjo, 1990 OK 35, 790 P.2d 1098. Both cases involve disputes between tribal members with tribal housing authorities on tribal land.

¶3 The Courts' discussion of state subject matter jurisdiction is not only relevant, but it is dispositive.[1] In Ahboah, supra, the Kiowa Housing Authority sought possession and forcible entry and detainer against tenants occupying housing built on "Indian Country" allotment land. In determining whether an Oklahoma state court has subject matter jurisdiction, the Court said:

¶18 Although making generalizations about the allocation of subject matter jurisdiction between federal, state and tribal governments is treacherous, certain general principles are clear. Congress has plenary power over Indians and Indian activities by virtue of the Indian commerce clause and supremacy clause of the United States Constitution. Federal power over Indian activities has always been exercised broadly, subject to few limitations.

¶19 Tribal authority over tribal members and their property is derived either through the doctrine of inherent sovereignty (Indian nations) or, as more recently articulated, from the protection afforded to tribal self-government by Congress. White Mountain Apache Tribe v. Bracker, 448 U.S. 136, 143, 100 S.Ct. 2578, 2583, 65 L.Ed.2d 665 (1980).

¶20 As a general principle, states have full authority over Indians and Indian activity outside Indian Country. Within Indian Country, state jurisdiction may be exercised only if the field has not been preempted by federal statutes, regulations and policy, and tribal authority has not been determined. In areas traditionally within the federal ambit, states may exercise authority over Indians or Indian Country only with the explicit consent of Congress.

¶21 Public Law 280 embodies express Congressional consent to state assumption of civil and/or criminal jurisdiction over Indians and Indian activities within Indian Country, provided that certain conditions are met. Public Law 280 has appeared in two forms. As originally enacted, states were divided into two groups: mandatory states (those required to assume civil and criminal jurisdiction) and optional states (which could voluntarily assume jurisdiction by affirmative legislative action). The optional states were further divided into two groups: those whose constitutions and enabling acts disclaimed all title to and interest in Indian lands within state borders and those states having no such disclaimer. Congress perceived that disclaimer clauses presented a barrier to the assumption of jurisdiction. The barrier presented by the enabling acts was removed by Congress, but disclaimer states were required to amend their constitutions "where necessary" as well as to take affirmative legislative action to assume jurisdiction. Oklahoma is among the disclaimer states.

¶22 Public Law 280 was amended by the Civil Rights Act of 1968 in two significant ways: first, the affirmative legislative action requirement was removed; second, consent by tribal referendum was required before state jurisdiction could be assumed. The Kiowa Tribe has not assented to the assumption of jurisdiction by the State of Oklahoma. Therefore Oklahoma to assume jurisdiction under Public Law 280 must have done so under the original 280 Act before the amendment by the Civil Rights Act of 1968. (Footnotes omitted)

The Court held that Oklahoma state courts lacked subject matter jurisdiction over the cause because the State of Oklahoma had not assumed such jurisdiction under Public Law 280.[2]

¶4 Similarly, a few years later in Harjo, supra, we addressed state court subject matter jurisdiction in a similar dispute. The house involved in the dispute was part of a "Dependent Indian Community." Harjo maintained that her house was part of a "dependent Indian community," located in "Indian country", and fell within federal, not state jurisdiction. The Harjo Court said:

Under the federal constitution, Congress has exclusive authority over Indian affairs. U.S. Const., Art. I, § 8. 18 U.S.C.A. § 1151 defines "Indian country" as

(a) all land within the limits of any Indian reservation under the jurisdiction of the United States Government, notwithstanding the issuance of any patent, and, including rights-of-way running through the reservation.

(b) all dependent Indian communities within the borders of the United States whether within the original or subsequently acquired territory thereof, and whether within or without the limits of a state, and

(c) all Indian allotments, the Indian titles to which have not been extinguished. . . . (emphasis added)

If indeed her house lies within Indian country then the state court was without jurisdiction to proceed in the forcible entry and detainer action. Ahboah v. Housing Authority Kiowa Tribe, 660 P.2d 625 (Okla. 1983).

We held that state courts lacked subject matter jurisdiction to decide the matter. After Harjo alleged that the trial court also erred in awarding attorney fees to the Housing Authority when it lacked subject matter jurisdiction to decide the underlying matter, we agreed because the matter was not justiciable in state court -- period. The same is true in this cause.

II. 

THE ONLY WAY THE STATE OF OKLAHOMA COULD ASSERT
JURISDICTION TO DECIDE THE UNDERLYING MATTER AND/OR 
ATTORNEY FEES IS IF THE PARTIES EXPRESSLY WAIVED
SOVEREIGN IMMUNITY.

¶5 Historically, sovereign immunity must be clearly and unambiguously waived.[3] Does the filing of a lawsuit in state court automatically constitute a waiver of the Tribe's sovereign immunity? If not, what does constitute a waiver? The District Court has the duty to inquire into its jurisdiction.[4] The easiest solution would have been for the District Court to ask the tribal entity whether it clearly and unequivocally waived sovereign immunity when it first filed the lawsuit against its former chairman. This Court could issue the same show cause order. Regardless, the question is important.

¶6 Additionally, the respondent argues that the Tribe is a necessary and indispensable party that must be joined in order for the Court to determine sovereign immunity of the parties, as well as to obtain any money judgment against the respondent.[5] Regardless, the jurisdiction of the district courts of this state may have over the thirty-nine federally recognized nations of Oklahoma, and their citizens, has been the subject of litigation for the entirety of the history of this state and continues to this day.[6] Consequently, when an entity which appears to be part of the tribal government in Indian County, brings an action in the district court of Oklahoma against a former tribal leader, rather than in tribal court or in federal court, the question of jurisdiction should be addressed immediately.

¶7 Wallace Coffey, (defendant/appellant/Coffey) entered a special appearance and filed a motion to dismiss for lack of subject matter jurisdiction. He claimed that he was chair of the Comanche Nation at all times pertinent to the matter, and that he was afforded sovereign immunity. As previously noted, in Housing Authority of the Seminole Nation v. Harjo, 1990 OK 35, ¶22, 790 P.2d 1098, the Court granted certiorari to determine whether the state district court had jurisdiction over a forcible entry and detainer action involving a house built by the appellee. The Court of Appeals had held that the house was not situated in Indian country, and that the state court had jurisdiction.

¶8 However, we held that because the house was part of a "dependent Indian community" jurisdiction did not lie in the state courts. We ordered the trial court to dismiss the cause. When the appellant argued that the trial court erred by awarding attorney's fees to the Housing Authority, we agreed, stating that "this case is not a matter properly litigable in the state courts of Oklahoma." Thirty years ago, we held an award of attorney fees in a matter involving an intertribal conflict was not a properly litigable in the state courts of Oklahoma. It should have been brought in the Comanche Nation court system or the federal courts.[7]

¶9 Wallace Coffey resigned as the chairman of the Comanche Nation on February 5, 2016, after twenty-five years in the position.[8] The action of money judgment against Coffey was filed in the district court on October 11, 2016. The record does not indicate that the Comanche Nation, or its agents, filed a formal waiver of sovereign immunity at the time of filing. Nor are the sufficient facts in the record on appeal to determine whether a formal waiver was intended without an evidentiary hearing.

¶10 The Comanche Nation constitution is unclear as to who exactly had the authority to waive sovereign immunity. The Comanche Nation constitution, as amended November 7, 2019, does not expressly mention who has the authority to waive sovereign immunity on behalf of the Tribe or tribal official or entity. It does, however, allow the Tribal Council to transact business and hire an attorney. It provides in pertinent part:

Article IV, Section 6. . .

(e) To select and authorize tribal delegations to transact business on behalf of the tribe. When
travel is involved, the terms of the resolution shall include the purpose of the trip and the existence of the delegation's authority. . . .

Section 9. To hire an attorney to represent the tribe in legal matters.

Thus, the first questions the district court should have answered was whether the filing of the lawsuit by the Comanche Nation constituted a waiver of sovereign immunity on behalf of the tribe and a consent to jurisdiction of the district court or whether the tribe could also waive jurisdiction on behalf of the former chairman.

¶11 Because of the sovereign immunity of the parties, because the incidences giving rise to this litigation occurred on Tribal Trust Land between a sovereign nation and one of its citizens, the district court lacked subject matter jurisdiction of this cause. Even if the State of Oklahoma could entertain such causes in state court, unless the Comanche Nation waived its sovereign immunity clearly and unequivocally, no jurisdiction would exist.[9]

¶12 Evidently, the Comanche Nation Tourism Center utilized the state court system by voluntarily filing the action in the state district courts. There is no evidence that it was authorized to do so by the tribal council or that there was an express waiver of sovereign immunity. Other state and federal courts have examined this issue. In some cases, immunity may be waived by: entering into a business contract,[10] a "sue or be sued clause" in an a contract;[11] an arbitration agreement;[12] by a tribe's corporate charter;[13] if a tribal constitution allows someone other than tribal leaders to waive immunity;[14] if sovereign immunity is abrogated by Congress[15] or by tribal referendum.[16] Explicit language in the Tribe's complaint or counterclaim may expressly waive immunity.[17]

¶13 Our Court of Civil Appeals First Bank & Tr. v. Maynahonah, 2013 OK CIV APP 101, ¶1, 313 P.3d 1044 recognized that explicit language in the Tribe's constitution or by-laws may expressly waive immunity, but waiver cannot be implied by mere participation in an interpleader action. On the record presented, it is impossible to determine without further evidence or an admission by the Tribe, that it has waived its sovereign immunity.

¶14 Some courts have noted that, in some instances, the limited jurisdiction to determine attorney fees based on the court's inherent power after a lawsuit was dismissed for lack of jurisdiction.[18] The rule can be very different if the action is dismissed due to sovereign immunity where the court has no inherent power. For example, in Ex Parte Alabama Dept. of Transp., 978 So.2d 17, 25-26 (Ala. 2007), a case involving the dismissal of the Alabama Department of Transportation based on sovereign immunity, the appellant argued on appeal that, if the Alabama Supreme Court concluded that ALDOT was not a proper party, it should direct the trial court to allow amendment of the complaint to add the proper party. The Supreme Court of Alabama, with regard to dismissal due to sovereign immunity, said:

. . . if a trial court lacks subject-matter jurisdiction, it has no power to take any action other than to dismiss the complaint. A trial court lacks subject-matter jurisdiction if the defendant is immune under the doctrine of sovereign immunity. Larkins, 806 So.2d at 364 (" 'Article I, § 14, of the Alabama Constitution of 1901 thus removes subject-matter jurisdiction from the courts when an action is determined to be one against the State.' " (quoting Lyles, 797 So.2d at 435)). Thus, this Court cannot order the trial court to allow Good Hope to amend its complaint because the trial court lacks subject-matter jurisdiction. . .

. . . "Lacking subject matter jurisdiction [a court] may take no action other than to exercise its power to dismiss the action .... Any other action taken by a court lacking subject matter jurisdiction is null and void." ' " Ex parte Blankenship, 893 So.2d at 307 (quoting State v. Property at 2018 Rainbow Drive, 740 So.2d 1025, 1029 (Ala.1999), quoting in turn Beach v. Director of Revenue, 934 S.W.2d 315, 318 (Mo.Ct.App.1996)).

The same rationale applies whether the entity entitled to sovereign immunity is a State or a Native Tribe. If jurisdiction does not exist due to sovereign immunity, the court lacks jurisdiction to award attorney fees. If jurisdiction does not exist because all of the transactions occurred on Indian Trust Land between a tribe and a tribal member in which the State of Oklahoma has no jurisdiction, then any action taken such as awarding attorney fees would be null and void due to lack of jurisdiction.

¶15 Even if sovereign immunity were not an issue, in General Motors Acceptance Corp. v. Carpenter, 1978 OK 39, ¶8, 576 P.2d 1166, the Court addressed whether a trial court could reopen a case in order to determine and award attorney fees after the plaintiff dismissed the cause. The Court held that once a party has dismissed his or her petition under §684, no jurisdiction remains in district court to go forward with the action. The Court explained that the district court's decision to reopen the case was the improper exercise of judicial discretion and the district court had no power to reassume jurisdiction over the dismissed case to award attorney fees. Federal Courts have reached similar results recognizing that fee shifting provisions themselves do not confer subject matter jurisdiction to award attorney fees.[19] The same reasoning should apply here, especially when the dismissal was for lack of subject matter jurisdiction due to sovereign immunity.

III.

PREVAILING PARTY ATTORNEY FEES.

¶16 My other concern is that although the district court lacked jurisdiction in this cause, the majority's holding will control the determination of the prevailing party in all other causes. Had this not involved questions of sovereign immunity, I could agree with the dissent that, the Coffey could qualify for an award as a prevailing party within the meaning of 12 O.S. 2011 §936.[20] The dissent discusses Professional Credit Collections, Inc., v. Smith, 1997 OK 19, ¶10, 933 P.2d 307. There, we held Smith's successful motion to vacate a default judgment was a quest for affirmative relief and success placed Smith, in the status of prevailing party which entitled her to an attorney's fee award. This was so even though the plaintiff dismissed its action without prejudice prior to Smith filing an answer after the default judgment was vacated.

¶17 In Professional Credit, supra, we held the trial court's ruling in Smith's favor on her motion to vacate fully satisfied the §936 requirement that she be successful in the case. We interpreted §936 in conjunction with 12 O.S. 1991 §684.[21] Although the majority Professional Credit disapproves, it has not been overruled. The only statutory changes that occurred after Professional Credit was a change to §684 which concerned when a plaintiff could dismiss a case.[22] The language allowing a plaintiff to dismiss an action was changed from "affirmative relief" to "any time before pretrial." This change does not implicate the rationale of the cause. If the majority thinks Professional Credit was wrongly decided it should overrule it, but it has not done so. Without either following it, or overruling it, the majority has thrown confusion into what a "prevailing party" is in other cases as well.

¶18 Here, the trial court's granting of Coffey's motion to dismiss for lack of subject matter jurisdiction was with prejudice. In Professional Credit, the plaintiff dismissed its petition without prejudice and could refile its action. That possibility did not prevent the Court from determining prevailing party status for the purpose of awarding an attorney's fee.

CONCLUSION

¶19 The majority's holding that "[a]s an initial matter, we find the trial court had jurisdiction to adjudicate Coffey's application for attorney fees despite its lack of subject matter jurisdiction over the merits of the case" is flawed. If a court of the State of Oklahoma never had jurisdiction over matters occurring in "Indian Country," it is impossible to acquire jurisdiction later to decide attorney fees. The trial court's only option was to dismiss the case for the lack of subject matter jurisdiction.

FOOTNOTES

[1] Subsequent to these cases, the Court in Lewis v. Sac & Fox Tribe of Okla. Housing Authority, 1994 OK 20, 896 P.2d 503 modified the analysis to include the preliminary inquiry into nature of rights sought to be settled and noting that only that litigation that is explicitly withdrawn by Congress or that which infringes upon tribal self-government stands outside boundaries of permissible state-court cognizance.

[2] Act of August 15, 1953, Ch. 505, 67 Stat. 588 amended by Public Law 90-284, Act of April 11, 1968, 82 Stat. 80.

[3] Dilliner v. Seneca-Cayuga Tribe, 2011 OK 61, ¶12, 258 P.3d 516 provides:

The standard of review for questions concerning the jurisdictional power of the trial court to act is de novo. Jackson v. Jackson, 2002 OK 25, 45 P.3d 418. As a matter of federal law, an Indian tribe is subject to suit only where Congress has authorized the suit or the tribe has waived its immunity. Kiowa Tribe of Oklahoma v. Manufacturing Technologies, Inc., 523 U.S. 751, 754, 118 S.Ct.1700, 140 L.Ed.2d 981 (1998). Waiver of sovereign immunity cannot be implied but must be unequivocally expressed. Santa Clara Pueblo v. Martinez, 436 U.S. 49, 58, 98 S.Ct. 1670, 56 L.Ed.2d 106 (1978). Absent an effective waiver or consent, a state court may not exercise jurisdiction over a recognized Indian tribe. Pullayup Tribe, Inc. v. Department of Game of the State of Washington, 433 U.S. 165, 172, 97 S.Ct. 2616, 53 L.Ed.2d 667 (1977).

[4] It is the duty of the Court to inquire as to the propriety of the court's jurisdiction. Independent School Dist. #52 of Oklahoma City v. Hofmeister, 2020 OK 56, ¶52, ___ P.3d__ (awaiting mandate).

[5] Title 12 O.S. 2011 §2019. The lack of necessary joinder is the reason the author of the majority opinion gave as the dissenting reason that the Court could not consider our recent case of Treat v. Stitt, 2020 OK 64, ___ P.3d ___.

[6] McGirt v. Oklahoma, 140 S.Ct. 2452, 2469, 207 L.Ed.2d 985 (2020).

[7] www.comanchenation.com.

[8] www.Indianz.com, "Wallace Coffey resigns as chair of Comanche Nation after 25 years," February 8, 2016.

[9] Sheffer v. Buffalo Run Casino, PTE, Inc., 2013 OK 77, ¶22, 315 P.3d 359 states:

Only an express grant of jurisdiction by Congress or adoption of Public Law 280 will confer civil-adjudicatory jurisdiction to the State of Oklahoma. "It is undisputed that Oklahoma was not a state which was allowed to assert civil jurisdiction over Indian Tribes under Public Law 280." Cossey, 2009 OK 6, 212 P.3d 447 (Kauger, J., concurring in part/dissenting in part ¶ 26); Okla.Tax Comm'n v. Sac & Fox Nation, 508 U.S. 114, 125 (1993) ("Oklahoma did not assume jurisdiction pursuant to Pub.L. 280."). And IGRA did not expressly grant civil-adjudicatory jurisdiction to the State of Oklahoma, but rather, included a provision "which allowed tribes and states to negotiate an allocation of jurisdiction to the states."

[10] In State ex rel. Suthers v. Cash Advance and Preferred Cash Loans, 205 P.3d 389, 400 (Colo. Ct. App. Div. II 20080 noted that a contract could waive sovereign immunity in off reservation commercial applications when certain factors are evaluated. It stated:

. . .In determining whether an activity was conducted off the reservation, courts generally look to where (1) the contract was entered into; (2) the contract was negotiated; (3) performance is to occur; (4) the subject matter of the contract is located; and (5) the parties reside. Emerson v. Boyd, 247 Mont. 241, 242--43, 805 P.2d 587, 588 (1991); see Wood Bros. Homes, Inc. v. Walker Adjustment Bureau, 198 Colo. 444, 447--48, 601 P.2d 1369, 1372--73 (1979) (adopting same five-part test from Restatement (Second) Conflict of Laws § 193 (1971) to resolve conflict of law issues involving contracts).

Here, the trial court was required to make factual findings to apply this test, and so we are faced with a mixed question of law and fact, which we review de novo. See Edge Telecom, Inc. v. Sterling Bank, 143 P.3d 1155, 1159 (Colo.App.2006)(enforcement of forum selection clause). . . .

[11] Martinez v. S. Ute Tribe, 150 Colo. 504, 510, 374 P.2d 691, 694 (1962); see also Rosebud Sioux Tribe v. A & P Steel, Inc., 874 F.2d 550, 552 (8th Cir.1989); Kenai Oil & Gas, Inc. v. Dep't of Interior, 522 F.Supp. 521, 528 (D.Utah 1981), aff'd and remanded, 671 F.2d 383 (10th Cir.1982); Parker Drilling Co. v. Metlakatla Indian Cmty., 451 F.Supp. 1127, 1136 (D.Alaska 1978); Dacotah Properties--Richfield, Inc. v. Prairie Island Indian Cmty., 520 N.W.2d 167, 170 (Minn.Ct.App.1994). "[A] sue or be sued clause will only accomplish a waiver when the clause clearly expresses an intent to waive immunity," not where conditions placed on the waiver are left unmet. Sanchez v. Santa Ana Golf Club, Inc., 136 N.M. 682, 686, 104 P.3d 548, 552 (N.M.Ct.App.2004)(citing Martinez, 150 Colo. at 508--10, 374 P.2d at 693--94).

[12] C & L Enterprises, Inc. v. Citizen Band Potawatomi Indian Tribe, 532 U.S. 411, 420-22, 121 S.Ct. 1589, 149 L.E.2d 623 (2001).

[13] Wright v. Colville Tribal Enterprise, 147 P.3d 1275, 1280 (Wash. 2006)..

[14] Rush Creek Solutions, Inc., v. Ute Mountain Ute Tribe, 107 P.3d402, 406--07 (Colo. Ct. App. Div. II 2004).

[15] Foxworthy v. Puyallup Tribe of Indian Ass'n, 141 Wash. App. 221, 227-28, 169 P.3d 53 (2007).

[16] See, Lewis v. Sac & Fox Tribe of Okla. Housing Authority, note 1, supra, noting that the State may assert cognizance over Indian Country only if enrolled Indians have given their consent by tribal referendum.

[17] Rupp v. Omaha Indian Tribe, 45 F.3d 1241 (8th Cir. 1995).

[18] For example, in Musser v. Musser, 1998 OK CIV APP 13, ¶10, 955 P.2d 744, the court noted:

We note that the trial court's inherent powers to manage its own affairs to achieve an orderly and timely disposition of cases are a necessary incident to the trial court's jurisdiction. Winters v. City of Oklahoma City, 1987 OK 63, 740 P.2d 724. Winters recognized that an attorney's personal liability for the opponent's attorney fees is an exercise of the trial court's inherent supervisory powers. Reimbursement, which was anticipated in the original order, is a logical exercise of the trial court's inherent powers. The instant situation is similar to the trial court's power to order an attorney, not a party in interest, to pay sanctions to the opposing party or counsel. In Bentley v. Hickory Coal Corp., 1992 OK CIV APP 68, 849 P.2d 417, this Court held that the trial court has jurisdiction, even after the case has been dismissed, to order an attorney to pay attorney fees as a sanction. The Oklahoma Supreme Court has held that the key to requiring an attorney to pay sanctions is notice and an opportunity to be heard. Helton v. Coleman, 1991 OK 43, 811 P.2d 100. We find this holding comports with our reading of Ford, supra, that lack of notice and opportunity to be heard were the principal factors in finding this Court without jurisdiction to enter the order in that case.

[19] W. G. v. Senatore, 18 F.3d 60, 64 (U.S. Ct App. 2nd Cir. 1994) [Simply stated using the common law approach, when a determination is made that no jurisdiction lies, the district court has "no power to do anything but to strike the case from the docket." The Mayor v. Cooper, 73 U.S. (6 Wall.) 247, 250, 18 L.Ed. 851 (1868). In keeping with these principles, fee shifting provisions cannot themselves confer subject matter jurisdiction. Rather, such provisions must be read in conjunction with substantive statutes to establish proper jurisdiction over fee applications. For example, in the civil rights context, 42 U.S.C. § 1988 empowers a court to award reasonable attorney's fees only to the prevailing party in a proceeding brought to enforce one of the substantive sections of the civil rights laws. Where there is no subject matter jurisdiction to proceed with the substantive claim, as a matter of law "[t]hat lack of jurisdiction bar[s] an award of attorneys fees under section 1988." Keene Corp. v. Cass, 908 F.2d 293, 298 (8th Cir.1990) (reversing district court's award of attorney's fees under § 1988 after affirming district court's conclusion that it lacked subject matter jurisdiction under § 1983); see also Smith v. Brady, 972 F.2d 1095, 1100 (9th Cir.1992) (addressing fee shifting in tax law context; failure to exhaust requisite administrative remedies precluded fee award); J.G. v. Board of Educ. of Rochester City Sch. Dist., 830 F.2d 444, 447 (2d Cir.1987) (recognizing questionable status of administrative exhaustion under IDEA's precursor, the Education of the Handicapped Act, appellate court avoided jurisdictional question by converting district court's decision on attorney's fees to an award under § 1988 in light of plaintiff's success on parallel claims brought pursuant to § 1983).]

[20] Title 12 O.S. 2011 §936 provides:

A. In any civil action to recover for labor or services rendered, or on an open account, a statement of account, account stated, note, bill, negotiable instrument, or contract relating to the purchase or sale of goods, wares, or merchandise, unless otherwise provided by law or the contract which is the subject of the action, the prevailing party shall be allowed a reasonable attorney fee to be set by the court, to be taxed and collected as costs.

B. In any civil action to recover unpaid fees, fines, costs, expenses or any other debt owed to this state or its agencies, as defined pursuant to Section 152 of Title 51 of the Oklahoma Statutes, unless otherwise provided by law, the prevailing party shall be allowed a reasonable attorney fee to be set by the court, to be taxed and collected as costs.

[21] Title 12 O.S. 1991§684 provided;

A plaintiff may, on the payment of costs and without an order of court, dismiss any civil action brought by him at any time before a petition of intervention or answer praying for affirmative relief against him is filed in the action. A plaintiff may, at any time before the trial is commenced, on payment of the costs and without any order of court, dismiss his action after the filing of a petition of intervention or answer praying for affirmative relief, but such dismissal shall not prejudice the right of the intervenor or defendant to proceed with the action. Any defendant or intervenor may, in like manner, dismiss his action against the plaintiff, without an order of court, at any time before the trial is begun, on payment of the costs made on the claim filed by him. All parties to a civil action may at any time before trial, without an order of court, and on payment of costs, by agreement, dismiss the action. Such dismissal shall be in writing and signed by the party or his attorney, and shall be filed with the clerk of the district court, the judge or clerk of the county court, or the justice, where the action is pending, who shall note the fact on the proper record: Provided, such dismissal shall be held to be without prejudice, unless the words "with prejudice" be expressed therein. (Emphasis supplied)

[22] In 2013, Title 12 O.S. Supp. 2013 §684 was amended and it now provides:

A. An action may be dismissed by the plaintiff without an order of court by filing a notice of dismissal at any time before pretrial. After the pretrial hearing, an action may only be dismissed by agreement of the parties or by the court. Unless otherwise stated in the notice of dismissal or stipulation, the dismissal is without prejudice.

B. Except as provided in subsection A of this section, an action shall not be dismissed at the plaintiff's request except upon order of the court and upon such terms and conditions as the court deems proper. If a counterclaim has been pleaded by a defendant prior to the service upon the defendant of the plaintiff's motion to dismiss, the action shall not be dismissed against the defendant's objection unless the counterclaims can remain pending for independent adjudication by the court. Unless otherwise specified in the order, a dismissal under this subsection is without prejudice.

C. For failure of the plaintiff to prosecute or to comply with the provisions of this section or any order of court, a defendant may move for dismissal of an action or of any claim against the defendant.

D. The provisions of this section apply to the dismissal of any counterclaim, cross-claim, or third-party claim. A voluntary dismissal by the claimant alone pursuant to subsection A of this section shall be made before a responsive pleading is served or, if there is none, before the introduction of evidence at the trial or hearing.

If a plaintiff who has once dismissed an action in any court commences an action based upon or including the same claim against the same defendant, the court may make such order for the payment of costs of the action previously dismissed as it may deem proper and may stay the proceedings in the action until the plaintiff has complied with the order.(Emphasis supplied).

COMBS, J., dissenting.

¶1 The majority opinion holds that Coffey was not the prevailing party within the meaning of 12 O.S. §936, and therefore, he should be denied a reasonable attorney's fee. I believe even under a strict construction of this section, Coffey was the prevailing party. Section 936 provides, "[i]n any civil action to recover . . . on an open account . . . the prevailing party shall be allowed a reasonable attorney fee." I would not limit the meaning of prevailing party to only those who succeed on the merits of the open account action itself. Coffey filed a motion to dismiss within a civil action to recover on an open account. He prevailed on his motion because the district court lacked subject matter jurisdiction due to tribal sovereign immunity. The final order granting the motion to dismiss thereby dismissed this action with finality, subject to appeal, and therefore he was the prevailing party.

¶2 In Amphastar Pharm. Inc. v. Aventis Pharma SA, the Ninth Circuit noted it had previously established a two part test to determine whether attorney's fees may be awarded when the underlying action is dismissed for lack of subject matter jurisdiction. 856 F.3d 696, 708-09 (9th Cir. 2017). The test was established in Branson v. Nott, 62 F.3d 287 (9th Cir. 1995). The test provides: (1) Does the fee-shifting provision contain an independent grant of subject matter jurisdiction? (2) If so, did the winning party "prevail?" In deciding the first question, the court acknowledged it had found independent grants of jurisdiction in some cases and not in others. Amphastar, at 710. But it also found, "[w]e have been more willing to allow a district court to award attorneys' fees when the underlying issues concerned whether the district court had jurisdiction -- since a court always has jurisdiction to determine its own jurisdiction." Id. (citation omitted). The court observed that in Latch v. United States, 842 F.2d 1031, 1033 n.4 (9th Cir. 1988), it found a defendant could be awarded its attorney's fees because it "prevailed on the only issue over which the district court properly had jurisdiction, i.e., the determination that it had no jurisdiction." Amphastar, at 709; See also Weiss (Herbert), Estate of Weiss (Roberta) v. Comm'r of Internal Revenue, 88 T.C. 1036, 1040 (1987).

¶3 As to the second prong of the test, the court noted Branson had determined attorney's fees were only available to a party who had prevailed on the merits. Id. Branson held when a defendant wins because the action is dismissed for lack of subject matter jurisdiction he is never the prevailing party. Id., at 710. However, the Amphastar court concluded the United States Supreme Court had recently and effectively overruled that determination in Branson. Id. In CRST Van Expedited Inc., v. E.E.O.C., ___U.S. ___, 136 S.Ct. 1642, 1646, 194 L.Ed.2d 707 (2016), the Supreme Court explained a favorable ruling on the merits is not a necessary predicate to find that a defendant has prevailed. Id. at 709. The Supreme Court had reversed an Eight Circuit decision that declined to award attorneys' fees because the defendant did not win on the merits. Id.; CRST, at 1650, 1654. The Court elaborated at length concerning why defendants who prevail for various non-meritorious reasons should still be deemed the prevailing party. Id.; CRST, at 1650-1654. The Amphastar court found that the Supreme Court included an example where defendants prevailed on jurisdictional reasons and it never indicated jurisdictional and non-jurisdictional victories should be treated differently. Id. at 709-10. The court concluded that after dismissal for lack of jurisdiction the district court retained subject matter jurisdiction over the attorney's fee issue and the moving party was the prevailing party. Id. at 711.

¶4 I agree with the United States Supreme Court that a prevailing party does not necessarily mean only those who win on the merits of a case. Section 936 of Title 12 of the Oklahoma Statutes does not define prevailing party. There is no indication that the Legislature intended that defendants should be eligible to recover attorney's fees only when courts dispose of claims on the merits. See CRST, at 1651-1652. As the Weiss court found, "an order of dismissal for lack of jurisdiction is a final order, appealable as such, and surely is either a 'judgment' or a 'decision.'" Weiss, at 1040. I agree with the majority opinion that a court retains jurisdiction to award attorney's fees after it dismisses a case for lack of subject matter jurisdiction. However, I am perplexed under its analysis how anyone in that situation would be able to recover those fees pursuant to §936. The majority opinion makes it clear a defendant who obtains a dismissal for lack of subject matter jurisdiction is not entitled to prevailing party attorney's fees. It makes little sense for a defendant to have to raise an affirmative defense, prevail on that defense, the action is dismissed with finality in that court, and then have no recourse to receive his or her attorney's fees.

¶5 In Professional Credit Collections, Inc., v. Smith, we held the defendant's successful motion to vacate a default judgment was a quest for affirmative relief and such success placed the defendant, Smith, in the status of prevailing party which entitled her to an attorney's fee award. 1997 OK 19, ¶10, 933 P.2d 307. This was so even though the plaintiff dismissed its action without prejudice prior to Smith filing an answer after the default judgment was vacated. In an opinion authored by Justice Opala, we held the trial court's ruling in Smith's favor on her motion to vacate fully satisfied the §936 requirement that she be successful in the case. Id. Professional Credit has not been overruled and its holding is in line with the other opinions cited herein. Here, there is even clearer finality than that existing in Professional Credit. The trial court's granting of Coffey's motion to dismiss for lack of subject matter jurisdiction was with prejudice. In Professional Credit, the plaintiff dismissed its petition without prejudice and therefore could refile its action. That possibility did not prevent this Court from determining prevailing party status for the purpose of awarding an attorney's fee. The same is true in the present case. Here, the Appellee could refile its action in the proper jurisdiction, but that fact does not prevent this court from finding Coffey is the prevailing party when he was successful in his quest for affirmative relief, i.e., success on his motion to dismiss for lack of subject matter jurisdiction. I agree with the holding in Professional Credit and find the majority's attempt to diminish its value to be specious.

¶6 The majority concludes "a prevailing party is one who prevails on the merits of the action or for whom final judgment is rendered." Here, I would hold that Coffey was the prevailing party in this action as he is the party who has received a final judgment by the trial court's action in granting the motion to dismiss with prejudice. As such, Coffey is entitled to his attorney's fees pursuant to §936. To hold otherwise invites frivolous lawsuits and unnecessary and costly expenses to a defendant.

 

 





 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Court of Civil Appeals Cases
 Cite
Name
Level

 1992 OK CIV APP 68, 849 P.2d 417, 64 OBJ 346, Bentley v. Hickory Coal Corp.
Discussed
 2008 OK CIV APP 36, 181 P.3d 750, HASTINGS v. KELLEY
Discussed
 2009 OK CIV APP 71, 217 P.3d 636, CAPITAL ONE BANK v. PARSONS
Discussed
 2013 OK CIV APP 101, 313 P.3d 1044, FIRST BANK AND TRUST v. MAYNAHONAH
Discussed
 2015 OK CIV APP 2, 341 P.3d 693, AUSTIN PLACE, L.L.C. v. MARTS
Discussed
 2015 OK CIV APP 26, 347 P.3d 295, MILL CREEK LUMBER & SUPPLY CO. v. BICHSEL
Discussed at Length
 2020 OK CIV APP 2, 456 P.3d 1149, WAITS v. VIERSEN OIL & GAS CO.
Discussed at Length
 1998 OK CIV APP 13, 955 P.2d 744, 69 OBJ 1221, MUSSER v. MUSSER
Discussed
Oklahoma Supreme Court Cases
 Cite
Name
Level

 1987 OK 63, 740 P.2d 724, 58 OBJ 2066, Winters v. City of Oklahoma City
Discussed
 1998 OK 3, 952 P.2d 41, 69 OBJ 258, GOODWIN v. THE DURANT BANK & TRUST COMPANY
Discussed
 1940 OK 500, 108 P.2d 546, 188 Okla. 325, CARTER v. RUBRECHT
Discussed at Length
 1990 OK 35, 790 P.2d 1098, 61 OBJ 1032, Housing Authority of the Seminole Nation v. Harjo
Discussed at Length
 1991 OK 16, 806 P.2d 648, 62 OBJ 785, Kay v. Venezuelan Sun Oil Co.
Discussed
 1991 OK 43, 811 P.2d 100, 62 OBJ 1444, Helton v. Coleman
Discussed
 1991 OK 117, 820 P.2d 812, 62 OBJ 3481, Beard v. Richards
Discussed at Length
 1992 OK 48, 829 P.2d 978, 63 OBJ 1130, Underwriters at Lloyd's of London v. North American Van Lines.
Discussed at Length
 1994 OK 20, 896 P.2d 503, 65 OBJ 535, Lewis v. Sac and Fox Tribe of Oklahoma Housing Authority
Discussed
 1997 OK 19, 933 P.2d 307, 68 OBJ 783, Professional Credit Collections, Inc. v. Smith
Discussed at Length
 1936 OK 344, 58 P.2d 116, 177 Okla. 44, KELLY v. MAUPIN
Discussed
 2001 OK 53, 27 P.3d 95, 72 OBJ 1938, GRP OF TEXAS, INC v. EATERIES, INC.
Discussed
 2001 OK 110, 37 P.3d 882, 72 OBJ 3672, KEATING v. EDMONDSON
Discussed
 1966 OK 90, 414 P.2d 300, SWAN-SIGLER, INC. v. BLACK
Discussed at Length
 2002 OK 25, 45 P.3d 418, JACKSON v. JACKSON
Discussed
 2002 OK 52, 50 P.3d 218, CITY OF DURANT v. CICIO
Discussed
 2003 OK 35, 67 P.3d 339, FINNELL v. JEBCO SEISMIC
Discussed
 2003 OK 72, 77 P.3d 1042, TIBBETTS v. SIGHT 'n SOUND APPLIANCE CENTERS, INC.
Discussed
 2004 OK 7, 85 P.3d 841, FANNING v. BROWN
Discussed at Length
 2007 OK 50, 164 P.3d 1063, SOONER BUILDERS & INVESTMENTS, INC. v. NOLAN HATCHER CONSTRUCTION SERVICES, L.L.C.
Discussed
 2007 OK 95, 177 P.3d 551, IN RE: DE-ANNEXATION OF CERTAIN REAL PROPERTY FROM THE CITY OF SEMINOLE
Discussed
 2009 OK 6, 212 P.3d 447, COSSEY v. CHEROKEE NATION ENTERPRISES, LLC
Discussed
 2011 OK 61, 258 P.3d 516, DILLINER v. SENECA-CAYUGA TRIBE OF OKLAHOMA
Discussed
 2013 OK 77, 315 P.3d 359, SHEFFER v. BUFFALO RUN CASINO, PTE, INC.
Discussed
 2014 OK 22, 324 P.3d 399, HALL v. THE GEO GROUP, INC
Discussed
 2015 OK 51, 353 P.3d 532, DUTTON v. CITY OF MIDWEST CITY
Discussed
 1978 OK 39, 576 P.2d 1166, GENERAL MOTORS ACCEPTANCE CORP. v. CARPENTER
Discussed at Length
 1980 OK 95, 613 P.2d 1041, Thayer v. Phillips Petroleum Co.
Discussed
 2018 OK 60, 427 P.3d 1050, TULSA ADJUSTMENT BUREAU v. CALNAN
Discussed
 2020 OK 56, INDEPENDENT SCHOOL DISTRICT # 52 v. HOFMEISTER
Cited
 2020 OK 64, TREAT v. STITT
Cited
 1998 OK 124, 975 P.2d 439, 69 OBJ 4267, Haggard v. Haggard
Discussed
 1983 OK 20, 660 P.2d 625, Ahboah v. Housing Authority of Kiowa Tribe of Indians
Discussed at Length
Title 12. Civil Procedure
 Cite
Name
Level

 12 O.S. 684, Dismissal before Trial Commenced without Court Order
Discussed at Length
 12 O.S. 696.4, Provision for Costs, Attorney Fees, and Interest
Cited
 12 O.S. 936, Action on Open Account - Attorney's Fee as Costs
Discussed at Length
 12 O.S. 940, Negligent or Willful Injury to Property - Attorney's Fees and Costs - Offer and Acceptance of Judgment
Cited
 12 O.S. 1580, Judgment - Damages - Attorney Fees
Cited
 12 O.S. 2019, Joinder of Persons Needed for Just Adjudication
Cited
Title 15. Contracts
 Cite
Name
Level

 15 O.S. 268, Repealed
Cited
Title 42. Liens
 Cite
Name
Level

 42 O.S. 176, Right to Recover Attorney's Fees
Cited


 
 








 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA